## No. 17,801.

GRANGE MUTUAL FIRE INSURANCE COMPANY, ET AL. *v.*
GOLDEN GAS COMPANY, INC.

(298 P. [2d] 950)

Decided June 4, 1956.   Rehearing denied July 16, 1956.

Mr. EMORY L. O'CONNELL, for plaintiffs in error.

Mr. GRAHAM SUSMAN, Mr. HYMAN D. LANDY, Mr. HARRY S. BERNSTEIN, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

PLAINTIFFS in error, plaintiffs in the trial court and hereinafter called plaintiffs or by name, seek review by writ of error of the judgment entered by the district court setting aside the verdicts of a jury and the judgment entered thereon, and entering judgment non obstante veredicto for the defendant. Plaintiffs' claims are for damages arising out of a fire caused by the alleged negligence of defendant in filling a farm home propane gas tank.

Plaintiff Grange Mutual Fire Insurance Company, under a contract of insurance, paid part of the fire loss which arose and claims rights by subrogation. Plaintiffs Grover J. Alder and Meda Anna Alder were the nonresident owners of the real property located in Jefferson County, Colorado, and owned some of the personal property damaged or destroyed by the fire. Plaintiffs Paul G. Alder and Maxine E. Alder were the occupants of the residence and garage damaged by the fire and were the owners of certain of the personal property destroyed by the fire.

The jury awarded plaintiff insurance company $1827.83; the Paul G. Alders $1242.89; and the Grover J. Alders $192.00.

The evidence discloses that about midday on January

13, 1953, defendant's employee Jackson drove to the Paul G. Alder home to make a delivery of liquid propane gas. The transfer was to be made from defendant's tank truck by a twenty-five foot hose into a stationary two hundred fifty-gallon storage tank. This tank was located about midway of the house and garage in question and about ten feet out from the house. Plaintiffs Paul G. and Maxine E. Alder were in their living room at the time and saw Jackson drive in and prepare to effect the transfer. Suddenly the hose came loose from the stationary tank and began to whip around spraying the house, garage and ground with liquid propane gas. The Alders ran out their back door to secure their two small children who were playing near the tank and as they reached the outdoors the area around their propane tank exploded into flames. Their estimate of the time lapse from seeing the hose break lose until the explosion occurred was from forty to sixty seconds. Jackson estimated it to be somewhat less. The fire could have been due to any one or more of three causes shown, viz: Defendant's truck exhaust; a vaporizer on the gas line from the stationary tank to the house; or the wildly whipping hose with its nozzle striking rocks embedded in the ground. These were not mere possibilities, as defendant claims, but actual facts appearing in the evidence and all within the control of defendant who had the duty to unload his dangerous cargo with a high degree of care.

When the fire started Jackson seized the Alders' daughter and carried her to safety. Their boy had already escaped. Both Jackson and the daughter received slight burns.

The only conflict in the testimony relating to the attempt to fill the stationary tank is concerning what Jackson was doing *after* he had coupled the hose to the tank and started the truck's engine and pump. The Alders testified that he was looking at a piece of their farm machinery forty feet away. Jackson testified he had merely walked around his truck to go back to the sta-

tionary tank and was about six feet from it when the explosion occurred. He admitted that he had looked at a tractor as he went from the truck to the tank, but testified that he did so only by looking at it enroute to the propane tank and that it was some twenty feet away from the tank.

The net results of the explosion and fire were the losses testified to by some of the plaintiffs at the trial.

Examination as to the cause of the accident after the fire showed that the truck, which had been moved away when the fire started, had not been damaged; that the stationary propane tank was still intact; that the coupling extending from the stationary tank had broken off at the point where the hose was attached to it; and that a "vaporizer," which was a small pilot light on the line located about three to four feet from the stationary tank to the house, was burning.

Jackson testified that the gas was "highly flammable" and that there were automatic shutoffs on the truck to stop the flow of gas if something happened to the line in unloading the truck. He also testified as to how quickly he could shut off the flow to the line when necessary, and that the automatic shutoff *did not entirely close* the feeding line for he admitted that not only did excess gas come out of the line, but that a small amount of gas also went through the check valves. Jackson's important testimony here was:

"Q. What happened to the automatic shut off? "A. It was not sufficient gas coming out of this small fitting on the end of the hose to snap those valves shut * * *."

Later on he testified that: "When I took the little girl away, then I ran back to the truck to shut the valves off on the hose and *stop this gas from coming out * * *"*

Plaintiffs urge the following three grounds for reversal of the judgment:

1. That the motion for judgment notwithstanding the verdicts could only be granted on the pleadings, and no defect there was charged or found.

2. That the facts established circumstances under which the doctrine of *res ipsa loquitur* was applicable and the burden was upon the defendant to show absence of negligence.

3. That even though *res ipsa loquitur* was not applicable, there was sufficient evidence of negligence which was the proximate cause of the plaintiffs' damage to take the case to the jury.

Defendant urges that no final judgment was entered and several other points allegedly sustaining the trial court's action. It is not necessary, however, to consider all the matters urged for affirmance or reversal since we feel that the following are determinative of the issues, to-wit:

*First Question To Be Determined.*

*Was there a final judgment entered?*

The question is answered in the affirmative. Defendant claims that the judgment entered below was not final. The pertinent part of the judgment entered by the trial judge read:

"DEFENDANT'S MOTION FOR JUDGMENT FOR DEFENDANT NOTWITHSTANDING VERDICTS OF JURY GRANTED. JUDGMENT ENTERED ON THE VERDICTS OF THE JURY VACATED. *JUDGMENT TO ENTER* IN FAVOR OF THE DEFENDANT." (Underscoring added.)

The clerk of the trial court thereafter *entered* the judgment on a form of "Entry of Judgment." This was in usual form except that no costs were granted.

We note that this judgment was entered after the following matters had occurred:

1. Denial of defendant's Motion to Dismiss made at the conclusion of plaintiff's evidence.

2. Denial of defendant's Motion for a Directed Verdict made at the conclusion of the trial.

3. Granting of Defendant's written motion made under Rule 50(b) of the Rules of Civil Procedure which was captioned a "MOTION FOR JUDGMENT FOR

DEFENDANT NOTWITHSTANDING VERDICTS OR IN THE ALTERNATIVE FOR A NEW TRIAL."

Defendant now contends that the failure to award costs has resulted in a nonreviewable judgment and cites *French v. Haarhues*, 132 Colo. 261, 287 P. (2d) 278, as authority therefor. That case is distinguishable on its facts, for there no final judgment entered by the clerk appeared in the record before this Court.

Rule 54(d) of our Rules of Civil Procedure, relating to judgments, provides in part:

"Costs. Except when express provision therefor is made either in a statute of this state or in these Rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; * * *."

Here the record shows that the judgment contained no order relating to costs. To omit an award of costs in a judgment is a proper form for a trial judge to use in *directing* that no costs be allowed a prevailing party. The judgment here was a final disposition of the case leaving nothing more to be done. This court said in *Little Pittsburgh Company v. Little Chief Company*, 11 Colo. 223, 227, 17 Pac. 760:

"* * * A judgment is the conclusion of law in a particular case announced by the court; and, while the language used by courts in pronouncing judgment is in many instances identical, yet there is no legally prescribed verbal formula which must be used for that purpose. If, in the record entry of what purports to be the judgment, enough is found upon which it can seen that the court intended to render judgment, it will not be set aside because it is not couched in artificial and technical phraseology."

*Second Question To Be Determined.*

*Was the evidence sufficient to require submission to the jury of the question of defendant's negligence as the proximate cause of the accident and plaintiff's damages?*

This question is answered in the affirmative.

The evidence clearly shows that defendant was selling and dispensing a highly inflammable liquid that gassifies upon contact with air. We think it is to be classified as a *dangerous substance* and handled with the care and caution commensurate with its dangerous character. *Garden of the Gods Village v. Hellman,* 133 Colo. 286, 294 P. (2d) 597. The mere fact that the explosion and fire occurred, however, does not raise a presumption of negligence on the part of defendant; that was a matter of proof. *Bishop v. Brown,* 14 Colo. App. 535, 61 Pac. 50.

Defendant's employee Jackson testified that the flow of liquid propane did not automatically stop when the coupling broke; that he had not inspected his truck or equipment for safety before the delivery; and admitted he had looked at a tractor not connected with his work while returning to the stationary tank after the pumping operation started; he also admitted he had not checked to see if the vaporizer flame was on before he began to unload the propane.

Defendant was required to anticipate that in unloading liquid propane into a residence tank, a coupling, hose or other object might break, and to conduct such operations in a manner commensurate with the dangers involved.

There was conflicting evidence as to whose duty it was to maintain the stationary tank in question, but whether the coupling on the tank was or was not defective does not relieve defendant from his obligation to exercise the degree of care required in handling this highly inflammable and dangerous liquid. We conclude from a careful reading of the record that the accident would have been avoided had defendant's equipment been equipped with proper automatic shut off valves, and if his employee Jackson has been paying close attention to the unloading, being ready at all times to act promptly if anything did go wrong. The proximate cause of this accident was defendant's negligence in not anticipating the potential danger involved and in not

being prepared to cope with such an emergency as here occurred.

There was no evidence that the plaintiffs interfered with, supervised or in any way regulated or controlled defendant's deliveries to their home. Defendant delivered once a month by contract and did free service work and tank conditioning for its customers when defendant determined such to be necessary.

■ It is contended by counsel for plaintiffs that the doctrine of *res ipsa loquitur* applies here. We do not think so. In *Zimmerman v. Franzen,* 121 Colo. 574, 220 P. (2d) 344, the Court set forth some of the tests applicable to the rule. Among other qualifications required it was stated on page 591 that:

"In other words, if the facts and circumstances of the occurrence give rise to conflicting inferences, *one leading to the conclusion of due care and the other to the conclusion of negligence, the doctrine does not apply.* The res ipsa loquitur rule cannot apply in a case where the circumstances surrounding the accident are not such as to raise a presumption of negligence. It may happen that a plaintiff makes a prima facie case by showing the accident with its attendant circumstances, and yet destroys by his own evidence the application of the doctrine. * * *" (Emphasis supplied.)

Here the evidence was such that the jury could reasonably find that defendant had sole control of the unloading, was negligent in handling the dangerous substance involved, and that such negligence was the proximate cause of plaintiffs' losses. This we think established a prima facie case.

### Third Question To Be Determined.

*Did the trial court err in setting the verdicts aside and in entering judgment for the defendant upon the facts here presented?*

This is answered in the affirmative. It is true that defendant proceeded in accordance with Rule 50 (b) of

the Rules of Civil Procedure and it is further true that the case of *Blain v. Yockey,* 117 Colo. 29, 184 P. (2d) 1015, cited by both plaintiffs and defendant discusses the problem of when a judgment non obstante veredicto should be entered. Briefly, it held that such a judgment must be granted, if at all, *on the record itself* and that it is but a belated motion for judgment on the pleadings.

Rule 50(b) provides:

"Reservation of Decision on Motion. Whenever a motion for a directed verdict made at the close of all evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party *who has moved for a directed verdict* may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial." (Emphasis supplied.)

Rule 50(b) thus provides the method for securing a judgment non obstante veredicto *when a motion for a directed verdict* has been properly requested. In *Blain v. Yockey,* supra, there was no motion for a dieted verdict. There plaintiff had filed a motion for summary judgment and for judgment notwithstanding the verdict contemporaneously with the filing of her

motion for a new trial. That case is thus thereby distinguishable.

In the instant case there was sufficient competent evidence to support the verdict and the trial court abused its discretion in setting the verdicts aside. *French v. Haarhues,* supra, cited by defendant, is applicable as to this point only where there is *no basis* to support the verdicts. Here the determination of both negligence and proximate cause were within the proper province of the jury and every presumption favors the correctness of the verdicts. *Schell v. Kullhem,* 127 Colo. 555, 259 P. (2d) 861; *Yockey Trucking Co. v. Hardy,* 128 Colo. 404, 262 P. (2d) 930.

The granting of a motion for judgment non obstante veredicto does not effect an automatic denial of an alternative motion for a new trial. The trial court should have also ruled on the defendant's motion for a new trial at the same time. *Montgomery Ward & Co. v. Duncan,* 311 U. S. 243. Also see *Burenheide v. Wall,* 131 Colo. 371, 281 P. (2d) 1000, *Singer v. Chitwood,* 126 Colo. 173, 247 P. (2d) 905.

*Fourth Question To Be Determined.*

*Was there competent legal evidence as to value of the losses claimed to support the verdicts?*

■ This is answered in the affirmative. The record is gorged like an overfed gourmet with evidence of plaintiff's reconstructed, itemized personal property losses. These were proved over defendant's objection in a reasonable manner since the property in question was destroyed and was unavailable for valuation. Some of the individual plaintiffs testified from their written memoranda as to what they owned that was destroyed by the fire and how they arrived at their final values for loss purposes. This was proper. *Central Georgia Railroad Co. v. Jones,* 170 Ala. 611, 54 So. 509. There was also other unrefuted evidence as to other losses. Defendant objected to certain evidence as to damages, but did not

move to strike this testimony which may in part have been incompetent. Plaintiffs having made a prima facie showing of damages, the burden shifted to the defendant to overcome the evidence. The record shows defendant failed to carry that burden. The rule of law which we approve is that the owner of personal property may testify as to its value.

The judgment is reversed and the cause remanded with instructions to vacate the judgment and to hear and determine defendant's motion for a new trial.

On petition for rehearing opinion modified and as modified, petition for rehearing denied.