## No. 22484.

H. B. WARD, D/B/A WARD TRANSPORT SERVICE AND MILTON TRANSPORT COMPANY, A WYOMING CORPORATION v. AERO-SPRAY, INC., A WASHINGTON CORPORATION.

(458 P.2d 744)

Decided September 22, 1969.

WORMWOOD, WOLVINGTON, RENNER and DOSH, RICHARD W. LAUGESEN, JR., for plaintiffs in error.

DUANE O. LITTELL, ARTHUR H. ANSTINE, RONALD C. HILL, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

PLAINTIFFS in error were the plaintiffs in the trial court. Their truck and tank trailer were destroyed by a fire which occurred at the Logan County Airport. They sought recovery for their loss against Aero-Spray, Inc. and Medford Flying Service. Two other named defendants in the trial court were dismissed prior to trial. After trial to the court, the plaintiffs were granted a default judgment against Medford Flying Service. As to the defendant, Aero-Spray, Inc., the trial court, after making findings of fact and conclusions of law, entered a judgment adverse to the plaintiffs and dismissed the complaint.

From this judgment, in favor of defendant Aero-Spray, Inc., the plaintiffs prosecute this writ of error on the premise that the evidence fails to support the judgment and that the trial court failed to properly apply the law

concerning the liability of a business host to an invitee, or misconceived the law applicable to the facts as shown from the evidence. We do not agree with the plaintiffs' contentions and we affirm the judgment of the trial court.

There is no substantial dispute as to the facts. Defendant, Aero-Spray, Inc. and Medford Flying Service, contracted with the State of Colorado to undertake an insecticide spraying project on fields which had been infested by grasshoppers. The defendant was to supply the insecticide, provide an area for its storage, and furnish equipment for unloading it into storage tanks and loading it into spray aircraft. Medford Flying Service contracted to furnish the aircraft, to load the aircraft, and to apply the insecticide on the land to be sprayed. The Logan County Airport was one of the sites selected to be used for the storage and application of the insecticide, which consisted of No. 2 diesel fuel to which a poison had been added. Aero-Spray engaged the plaintiffs to transport the insecticide from Denver to the storage area.

On the day of the fire, the plaintiffs' driver arrived at the Logan County Airport and was directed into a position for unloading by someone whose identity or employment was not clearly shown. Since there was evidence that Aero-Spray provided a maintenance man at the storage site, it could be inferred that this person directed the driver. When the unloading process began, no aircraft was present at the site, but during the process of the unloading into the storage tanks, a Medford aircraft taxied into position to load from the storage tanks. The aircraft positioned itself so that the truck and trailer were between its left wing and the storage tanks and pump.

The hose to fill the aircraft was drawn under the plaintiffs' truck and trailer and a Medford employee began to load the aircraft. The aircraft loading process ordinarily took from six to eight minutes and was nearly completed when a fire of undetermined origin erupted

on the left side of the aircraft which was nearest the truck and trailer. The flames spread quickly and engulfed the plaintiffs' truck as well as the hoses, pumps and meters. The fire burned itself out before the Sterling Fire Department arrived. Plaintiffs' tractor and trailer were totally destroyed. It is the plaintiffs' position that the fire was caused by the aircraft's engine which was kept running during the loading process and from the fact that engines of this type on occasion spout flames from the exhaust port. There was no testimony or evidence in the record to directly show that the exhaust flames, if any, were the cause of the blaze.

After the conclusion of all the evidence and oral argument on the facts and applicable law, the court found that Aero-Spray controlled the site upon which had been constructed two storage tanks, pumps, hoses and meters, for the unloading of insecticide cargoes by the plaintiffs and for the loading of aircraft, and that at the time of the fire, the plaintiffs' servant was on this site as a business invitee. The court then found that Aero-Spray did not fail to make the area reasonably safe for the plaintiffs' servant and equipment. The court also found that Aero-Spray or its servants did not negligently and carelessly operate the site or handle the insecticide, and that Aero-Spray did not cause the fire which resulted in the destruction of the plaintiffs' tractor and oil tank trailer. The court also made a finding to the effect that even assuming that the defendant was engaged in an ultrahazardous activity, the factual situation did not create liability on the part of this defendant.

A business host owes an invitee the duty of exercising reasonable and ordinary care for his safety. The reasonable or ordinary care to be exercised must be commensurate with the particular situation involved. The host does not become an insurer of the safety of the invitee or his property and in the absence of negligence, there is no liability. This is the general rule in Colorado as well as other jurisdictions. *Nettrour v. J. C.*

*Penney Company,* 146 Colo. 150, 360 P.2d 964; *King Soopers, Inc. v. Mitchell,* 140 Colo. 119, 342 P.2d 1006. See also 65 C.J.S. *Negligence* § 63 (45).

The president of Aero-Spray testified that the site in question was typical of other similar sites established for this project and other similar projects by the State of Colorado, and that there was nothing unusual about it which would make it dangerous or unsafe. He also testified that on other occasions, he had witnessed aircraft being loaded at the same time as trucks were unloading their cargo into the storage tanks and that there was nothing uncommon or dangerous about that procedure. There was no evidence introduced by the plaintiffs to show that the facility was not set up or operated in accordance with the usual standards in the industry. In effect, the trial court being the trier of the facts was unable to find any negligence on the part of Aero-Spray based upon the evidence presented and with this conclusion we agree.

Plaintiffs also contend that loading the aircraft while its engine was running made the loading ultrahazardous and therefore Aero-Spray should be held to be strictly liable on the basis of the fact that it had a duty to control the employee of Medford Flying Service during the loading of diesel fuel into the aircraft. The plaintiffs have cited no cases to support their contention that the transfer of petroleum products in this type of fact situation is ultrahazardous.

The evidence here clearly reflects that a Medford Flying Service employee was loading the aircraft when the fire broke out in the immediate area where he was filling the tank of the Medford Flying Service aircraft. The evidence is insufficient to establish that Aero-Spray had control over the procedure followed in loading the aircraft, or that the procedure used was ultrahazardous.

In our view, what we stated in *Grange Mutual Fire Ins. Co. v. Golden Gas Co.,* 133 Colo. 537, 298 P.2d 950 is applicable here. In that case, the defendant was dis-

pensing liquid propane gas, a highly flammable substance, when a coupling broke and a fire ensued. We stated:

"We think it is to be classified as a *dangerous substance* and handled with the care and caution commensurate with its dangerous character. *Garden of the Gods Village v. Hellman,* 133 Colo. 286, 294 P.2d 597. The mere fact that the explosion and fire occurred, however, does not raise a presumption of negligence on the part of defendant; that was a matter of proof. *Bishop v. Brown,* 14 Colo. App. 535, 61 Pac. 50."

See also *Ambriz v. Petrolane, Ltd.,* 49 Cal. 2d 470, 319 P.2d 1 where butane gas was denoted as an "inherently and highly dangerous commodity" but liability was held to rest on negligence.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.