James Willard VAN HOOSE and Louisa Van Hoose, Plaintiffs-Appellants,

v.

BLUEFLAME GAS, INC., Diamond Shamrock Corporation, and Phillips Petroleum Co., Defendants-Appellees.

No. 78–465.

Colorado Court of Appeals,
Div. III.

Nov. 19, 1981.

As Modified on Denial of Rehearing
Jan. 7, 1982.

Certiorari Granted March 8, 1982.

Williams, Trine, Greenstein & Griffith, P. C., William A. Trine, Boulder, Faricy, Tursi & Phelps, James V. Phelps, Pueblo, for plaintiffs-appellants.

Petersen & Fonda, P. C., Garrett Fonda, Pueblo, for defendant-appellee Blueflame Gas, Inc.

Donald E. LaMora, Colorado Springs, for defendant-appellee Diamond Shamrock Corp.

Louis J. Stuart, P.C., Louis J. Stuart, Pueblo, for defendant-appellee Phillips Petroleum Co.

KIRSHBAUM, Judge.

Plaintiffs, husband and wife, appeal a judgment entered against them upon a jury verdict in an action for personal injuries based upon an explosion and flash fire which occurred as the husband attempted to light a hot water heater in the basement of plaintiffs' Pueblo, Colorado, home. We reverse.

The record reveals that prior to the accident plaintiffs had purchased a quantity of liquified petroleum (L.P.) gas from defendant Blueflame Gas, Inc., a retail supplier of such gas. Defendants Diamond Shamrock Corporation and Phillips Petroleum Co., wholesale manufacturers and suppliers of L.P. gas, produced the gas purchased by plaintiffs at their Texas refineries and piped it to a La Junta, Colorado, terminal for storage prior to re-sale.

The L.P. gas was odorless when it arrived at La Junta. Odorization of L.P. gas prior to delivery to retail customers is required by rules promulgated by the State Inspector of Oils, Department of Labor and Employment. When the L.P. gas was loaded into a tanker truck for distribution to retail customers, odorization was accomplished by the addition of ethyl mercaptan to the L.P. gas in the ratio of 1.5 pounds per 10,000 gallons. Blueflame delivered the gas to plaintiffs and placed it in their storage tank.

At trial plaintiff pursued claims of negligence and claims of strict liability under *Restatement (Second) of Torts* § 402A. The negligence claims set forth in the amended pleadings included an allegation that defendants failed to warn plaintiff that the L.P. gas "did not contain an odorizing agent sufficient to produce an odor readily perceptible to normal or average olfactory senses when such gas was present in air in concentrations sufficient to ignite or explode." The pretrial order described defendants' alleged negligence as consisting in part of "failing to warn the plaintiffs the L.P. gas was not odorized." The description of plaintiffs' strict liability claims contained in the pretrial order did not include an allegation of a failure to warn, but did allege "that the L.P. Gas was defective because it was not odorized."

Prior to trial, plaintiffs informed the trial court that they might seek to broaden their strict liability claim to include an allegation of a failure to warn that the odorant might dissipate. Defendants indicated that they would oppose any such attempt to amend the pleadings.

During the second day of trial, plaintiffs did move to so amend their strict liability claim. The trial court denied the motion, but ruled that evidence of the potential dissipation of the odorant would be admissible with regard to plaintiffs' negligence claim. During the trial all parties presented testimony concerning the properties of ethyl mercaptan. All such testimony was admitted under instructions requiring the jury to consider such evidence only with regard to plaintiffs' negligence claims.

Plaintiffs later moved to amend the pre-trial order to include a broadened strict liability claim, and also moved to so amend their pleadings both at the conclusion of their case and at the conclusion of all the evidence. All three motions were denied.

## I. NEGLIGENCE CLAIMS

Plaintiffs contend that the trial court's instruction defining the requisite duty of care was erroneous. We agree.

At trial, plaintiffs tendered an instruction which stated that one who possesses or controls an exceptionally dangerous instrumentality assumes additional responsibilities commensurate with the degree of danger inherent in such instrumentality. The trial court rejected this instruction and, over plaintiffs' objection, defined the applicable duty of care in terms of reasonable conduct. Upon considering this issue during post-trial proceedings, the trial court initially granted plaintiffs' new trial motion on the ground that the tendered instruction should have been given in place of the standard reasonable care instruction. The trial court later reversed itself and denied the motion upon the mistaken assumption that plaintiffs had failed to object to the reasonable care instruction.

Plaintiffs' tendered instruction was based on the decision of *Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977), wherein our Supreme Court defined the standard of care required of electric utility companies in performing an "inherently dangerous activity." Liquified propane gas is a "dangerous substance." *Grange Mutual Fire Insurance Co. v. Gold-*

*en Gas Co.*, 133 Colo. 537, 298 P.2d 950 (1956). Unlike the situation in *Kulik v. Public Service Co.*, 43 Colo.App. 139, 605 P.2d 475 (1979), aff'd sub nom. *Metropolitan Gas Repair Service, Inc. v. Kulik*, Colo., 621 P.2d 313 (1980), relied on by defendants, here, evidence was presented to the jury by plaintiffs and by defendants which arguably linked the accident to the delivery of the gas.

Having objected to the reasonable care instruction given, and having tendered a proper alternative instruction which was supported by the evidence, plaintiffs were entitled to have the jury instructed as to their theory of the applicable standard of care. The instruction given did not state all the applicable law and was prejudicial to plaintiffs. Hence, the judgment as to lack of negligence must be reversed.

## II. STRICT LIABILITY

With respect to plaintiffs' strict liability claim, the trial court, over plaintiffs' objection, instructed the jury that a seller who delivers a product in a safe condition is "not liable" and that the plaintiffs had the burden of establishing that the product was "in a defective condition at the time it left the hands of the particular seller." In *Prutch v. Ford Motor Co.*, Colo., 618 P.2d 657 (1980), decided after the trial of this case, our Supreme Court rejected the argument that plaintiffs in actions based on express and implied warranty must assume the onerous and often impossible burden of establishing that a particular product was defective at the time it left the control of the manufacturer. We agree with plaintiffs' argument that the rationale of *Prutch v. Ford Motor Co., supra*, renders erroneous the burden of proof instruction given in this case.

In view of our conclusion that plaintiffs must be granted a new trial on the issues of negligence and strict liability, we also agree with plaintiffs' contention that in the procedural and evidentiary posture of the case at trial, denial of their motions to amend their strict liability claim constituted error. Should a similar motion be filed in a timely manner prior to trial, it should be granted.

The judgment is reversed and the cause is remanded for new trial.

BERMAN and KELLY, JJ., concur.