## OLD COLONY RAILROAD COMPANY *vs.* ROCKLAND AND ABINGTON STREET RAILWAY COMPANY.

Suffolk.   March 20, 1894. — May 18, 1894.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Equity Jurisdiction — Statute — Street Railway — Railroad.*

When a street railway corporation is constructing its road, in accordance with the powers conferred upon it by its charter, over a location granted to it by the selectmen of a town, and is using or intending to use the safeguards pointed out by the statutes of the Commonwealth, this court has no power to say that it must use other and different safeguards.

This court will not consider questions not raised in the court below, and about which nothing appears in the evidence reported.

LATHROP, J.   This is a bill in equity, to restrain the defendant, a corporation operating a street railway by electricity, from crossing the tracks of the plaintiff's railroad at grade at North Avenue in Abington.

At the hearing before a single justice it appeared that the defendant was a duly organized street railway corporation, and that it had received a location from the selectmen of Abington, which authorized it to lay its tracks over certain streets, including North Avenue.   The plaintiff contends that, even if the defendant has complied with all the requirements of the statutes, this court has jurisdiction in equity to regulate the manner in which it shall operate its road, and to direct it to construct suitable and necessary signals, safeguards, and appliances for the safety of the public travelling upon the plaintiff's railroad.   We are of opinion that we have no jurisdiction to grant the relief prayed for.

By the Pub. Sts. c. 113, § 7, the selectmen of a town are empowered to grant a location of a street railway "under such restrictions as they deem the interests of the public may require."

Section 40 provides: "A street railway company whose track crosses the tracks of a steam railroad shall make the crossing in such a manner as to injure as little as possible such tracks; and shall not insert frogs therein, or make incisions into the rails thereof, without the consent of the directors of such road."

Section 41 provides: "When a street railway crosses at the

same level a steam railroad where locomotive engines are in daily use, every driver of a car upon the street railway shall, when approaching the point of intersection, stop his car within one hundred feet of the crossing."

By § 39, "A street railway company may use such motive power on its tracks as the board of aldermen of cities or the selectmen of towns through which it is located may from time to time permit."

The only power of this court to act in equity which is directly given by statute is found in § 63, which provides: "The Supreme Judicial Court shall have full equity powers to compel the observance of all laws governing street railway companies, and of all orders, rules, and regulations made in accordance with this chapter by the board of aldermen of a city, or the selectmen of a town, or by the board of railroad commissioners, and may compel such observance upon the petition of the mayor and aldermen of any city or the selectmen of any town in which the street railway is located." The case at bar does not fall within this section.

Under our general equity powers, conferred by the Pub. Sts. c. 151, § 4, we are of opinion that, when a street railway corporation is constructing its road, in accordance with the powers conferred upon it by its charter, over a location granted to it by the selectmen of a town, and is using or intending to use the safeguards pointed out by the statutes of the Commonwealth, we have no power to say that it must use other and different safeguards. The whole subject matter is regulated by the Legislature. Our duty is merely to see that the law is complied with, and not to interfere unless either the Constitution or the law requires us to do so.

The absurdity of any other rule is shown by what we are asked to do in this case. It is gravely argued that we should compel the defendant to put frogs in its tracks and have interlocking signals to protect the crossing. This, as appears from the testimony, would in the first instance cost about $6,000, and would require to maintain the system an expense of about $1,500 a year. And this is a system which the witnesses testify they have never known to be used by a street railway crossing the tracks of a steam railroad at grade.

The plaintiff further contends that the location was not proof of a right to cross the tracks, because it does not appear that it was accepted by the directors in writing within thirty days after they received notice thereof, as required by the Pub. Sts. c. 113, § 7. Also that it does not appear that it had filed a a certificate of payment of fifty per cent of its capital stock, as required by the Pub. Sts. c. 113, § 19.

These questions were not raised in the court below, and nothing appears in regard to them in the evidence reported, with the exception that it was conceded that the defendant had a charter and a location.

The bill alleges that the defendant " has no right to enter upon and construct a railroad upon and over said location and tracks of the plaintiff." This allegation it was the duty of the plaintiff to prove. It made certain concessions, and directed its evidence to a single point, namely, whether it was consistent with safety for the defendant to cross its tracks without the use of certain appliances. If there was any other ground for its contention that the defendant had no right to cross its tracks, it should have put in evidence to prove it.

The result is, that the decree of the single justice dismissing the bill with costs must be                    *Affirmed.*

*J. H. Benton, Jr.*, for the plaintiff.

*G. W. Kelley & W. J. Coughlan*, for the defendant.