No. 17,186.

CASS COMPANY-CONTRACTORS *v.* COLTON ET AL.

(279 P. [2d] 415)

Decided January 3, 1955.   Rehearing denied February 7, 1955.

594

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■

Messrs. JANUARY & YEGGE, Messrs. GORSUCH, KIRGIS, CAMPBELL, WALKER & GROVER, for plaintiff in error.

Messrs. WAGNER & WYERS, for defendants in error.

*En Banc.*

MR. JUSTICE BRADFIELD delivered the opinion of the Court.

THIS cause is brought to this Court to review a judgment of the district court of Jefferson county. Plaintiff in error was the defendant, and defendants in error were plaintiffs in the trial court and will be herein designated as in that court. Plaintiffs, representing twelve separate claims, instituted their suit against the defendant contracting company for damages to their respective houses in the west end of the City of Golden, Colorado, allegedly caused by the wrongful and negligent discharge of large quantities of high explosives by the defendant company during the years 1951 and 1952, and in particular an explosion on October 6, 1951, at its rock quarry one-half mile west of Golden, to their damage in varying amounts. Plaintiffs prayed for damages sustained and for injunctive relief against future damages. Defendant admitted discharging the explosives during 1951 and 1952, but

denied every other allegation in each claim, and specifically denied that the blasting complained of was wrongfully or negligently done. Trial was to the court March 24, 1953, wherein a finding of facts was made favorable to plaintiffs.

In brief, the trial court found: 1. The damages to plaintiffs' homes resulted from the blasting operations of defendant at its quarry near Golden. 2. That plaintiffs are entitled to judgments for the amounts of damages heretofore suffered by them respectively. 3. That plaintiffs have no plain, speedy and adequate remedy at law for future damages from blasting to be done hereafter by defendant. 4. That plaintiffs are entitled to an injunction and judgments as prayed. It was ordered, adjudged and decreed plaintiffs have judgments (eleven separate judgments aggregating $7739.10); also a permanent injunction enjoining defendant from damaging plaintiffs' properties in the future by the explosion of blasting materials at defendant's quarry about one-half mile west of Golden; that the parties "shall negotiate promptly * * * on methods of blasting and the quantity of blasting material which may be set off or exploded * * * so as to permit the defendant to continue its quarrying operations." Motion for a new trial was dispensed with.

We summarize plaintiffs' contentions as follows: 1. The defendant was negligent in conducting an inherently dangerous operation without proper precautions. 2. The defendant would be liable without any evidence of negligence on its part. 3. The evidence to sustain plaintiffs' claim is clear and convincing. 4. The evidence sustains each of plaintiffs' respective judgments for damages. 5. The injunction was properly issued. * * * If there is still something to be done, the injunction is not a final, appealable order, and the writ of error should be dismissed as to it.

Defendant's points for reversal are summarized: 1. There is no evidence of negligence by the defendant in

the blasting operations, and without negligence, there is no liability. 2. The evidence is insufficient to support the court's finding that the damages were proximately caused by the blasting operations of defendant. 3. There is insufficient evidence to sustain the amount of damages awarded. 4. This is not a proper case for injunctive relief. (a) There is not the clear and plain threat of harm for injunction to issue. (b) Injunction should not be granted where the possible damages to plaintiff is outweighed by the harm which its issuance would cause to the defendant, third persons and the public. 5. The injunctive order is vague, indefinite and impossible of enforcement and, therefore, void.

The principal question involved in this case is whether or not a stone quarry operator is liable for damages to nearby houses, caused by vibrations or concussions from the blasts of large quantities of explosives: First, without any showing of negligence; second, where negligence of operation is shown. The question of damages resulting from blasting vibrations or concussions has not specifically been before this Court.

Authorities from other jurisdictions are divided, some courts resting their opinions on the theory that to be liable for damages from blasting the operator must be shown to have been negligent; others that there must be shown facts and circumstances of the blasting from which negligence may be presumed, or which bring the case under the doctrine of res ipsa loquitur; others that the blasting operation must be shown to constitute a nuisance; and still others, that blasting is an inherently, dangerous operation, in which the operator engages at his peril, making him an insurer liable for direct, as well as consequential, injuries therefrom. *Whitman Hotel Corp. v. Elliott & Watrous Eng. Co.*, 137 Conn. 562, 79 A. (2d) 591, 594-5; *Brown v. Lunder Const. Co.*, 240 Wis. 122, 2 N.W. (2d) 859; *Pope v. Edward M. Rude Carrier Corp.* (W. Va.), 75 S.E. (2d) 584, 594-5. This

last theory of absolute liability appears to be the majority rule.

■ The one Colorado case cited, *G. B. & L. Ry. Co. v. Eagles,* 9 Colo. 544 (1887), 13 Pac. 696, involved blasting, and damage from falling rock. Some language in the case seems pertinent to the present proceeding: "In general, if a voluntary act, lawful in itself, may naturally result in the injury of another, or the violation of his legal rights, the actor must at his peril see to it that such injury or such violation does not follow, or he must expect to respond in damages therefor; and this is true regardless of the motive or the degree of care with which the act is performed. * * * [citing cases]. The company was bound at its peril to see that plaintiff's rights of property were not injuriously affected. In so far as these rights were interfered with by defendants' acts, such acts were wrongful; and if the injuries complained of were the natural and proximate consequence thereof, plaintiff was entitled to recover."

In other types of cases, but involving the same legal theory, Colorado cases have followed the doctrine of absolute liability for certain dangerous enterprises, such as the impounding of waters. This was based on the common law which later became embodied in our statute, '53 C.R.S., 147-5-4. In the case of *Garnet Ditch & Reservoir Co. v. Sampson,* 48 Colo. 285, 110 Pac. 79, the court cited with approval the following: "* * * the true rule of law is, that the person who, for his own purposes, brings on his own land and collects or keeps there anything likely to do mischief if it escapes, must keep it at his own peril; and if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape. * * * "

The present case was tried in the lower court on the theory that blasting was an inherently dangerous operation, rendering the operator absolutely liable for damages resulting therefrom; also on the theory that the

operator was negligent in its blasting operations, which caused the damages complained of.

Defendant operator specifically denied the blasting was an inherently dangerous operation; denied that it was wrongful or negligent in its blasting operations, and denied it caused any of the damages complained of.

■ Whether the damages complained of were caused without negligence or with negligence, in either event, it must be shown that the blasting was the proximate cause of the damage sustained.

■ This case involved alleged injuries by vibrations or concussions from the blastings. There is evidence in the record that the blastings were inherently dangerous operations, and that injuries to nearby houses became apparent immediately thereafter. In such case, whether or not the blastings were the proximate cause of the injuries complained of may be determined from the facts and circumstances of the case. *Velotta v. Yampa Coal Co.,* 63 Colo. 489, 167 Pac. 971. The facts and circumstances in the record in the instant case are sufficient to sustain the findings that the blastings were the proximate cause of the injuries and damages sustained.

On the question of negligence there also is evidence in the record sufficient to sustain the finding that defendant operator was guilty of negligence in failing to seek an appraisal of and foresee the natural consequences which might result from its blasting operations, especially in view of the prior remonstrances and warnings of possible damages from the nearby house owners to officers of the defendant operator at a public meeting.

■ The finding of the trial court that "The damages to the plaintiffs' homes * * * resulted from the blasting operations carried on at defendant's said quarry near Golden," entitling plaintiffs to judgments therefor, when considered with its other findings, conclusions and the evidence submitted, in effect amounted to a finding that the blasting operations were inherently dangerous operations, also that defendant operator was negligent in

its blasting operations; and that both the inherently dangerous operations and the negligences of the operator were proximate causes of the injuries sustained. The trial court having made these findings on the disputed evidence, this Court will not disturb them.

Defendant's third point for reversal is the insufficiency of the evidence to sustain the several amounts of damages awarded. The record discloses the several plaintiffs detailed the injuries to their several properties, and their costs paid or estimated for repairs. There is competent evidence to support the several findings of the trial court as to the amounts of damages.

Defendant's fourth and fifth points for reversal, are that "This is not a proper case for the imposition of injunctive relief." and that "the injunctive order of the court is vague, indefinite and impossible of enforcement and therefor void." These will be considered together. The injunction order provides:

"2. That the defendant, Cass Company-Contractors, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation who may receive actual notice of this order by personal service or otherwise, be and they are hereby enjoined from damaging the respective properties of said plaintiffs by the explosion of blasting materials at the defendant's said quarry in Clear Creek Canon about one-half mile west of the City of Golden, Colorado;

"3. That the parties and their respective counsel of record shall negotiate promptly and in good faith to attempt to agree on methods of blasting and the quantity of blasting material which may be set off or exploded at the defendant's said quarry, for the purpose of measuring or testing the same so as to permit the defendant to continue its quarrying operations at said quarry without damaging the homes of the plaintiffs;"

The injunctive order, paragraph 3, contains directions to the parties to seek an agreement on conditions to govern future blasting operations. Such directions and

undesignated conditions are not subjects for an injunctive order, therefore are without effect and void. A judgment must be definite and certain within itself. *Golden Press, Inc. v. Rylands,* 124 Colo. 122, 125, 235 P. (2d) 592. Defendant has the legal right to use its property as it wishes, but in the exercise of that right may not injure the property of others. In the present case defendant company may be able to devise a manner of operation, without further damage to nearby properties. There is no showing that it is, or may be, unable to respond in damages. For any future damages the parties injured have their remedy at law. The showing in the present action is not sufficient to sustain the injunctive order.

The judgment awarding damages to the respective plaintiffs is affirmed. The judgment for the injunctive order is reversed and the cause remanded with instructions to the trial court to vacate that order.

CHIEF JUSTICE STONE and Mr. JUSTICE ALTER did not participate in the consideration of this case.

On rehearing, MR. JUSTICE HOLLAND, formerly concurring, dissents.