## No. 17,646.

GARDEN OF THE GODS VILLAGE, INC. *v.*
ERIC HELLMAN, ET AL.
(294 P. [2d] 597)

Decided March 5, 1956.

Mr. JAMES F. QUINE, Messrs. PHELPS, FONDA & HAYS, for plaintiff in error.

Messrs. BENNETT & HEINICKE, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

DEFENDANTS in error, hereinafter referred to as plaintiffs, brought this action against the plaintiff in error, Garden of the Gods Village, Inc., a corporation, (hereinafter referred to as the corporation), and Leo Heyn, John Frazee, Frazee Brothers, Contractors, alleging that defendants conducted, or caused to be conducted, blasting operations on the property of the corporation at Manitou Springs, Colorado, which resulted in damage to the real property of plaintiffs, including a pottery kiln and a pyrometer, an instrument necessary in the proper operation of the kiln. Plaintiffs further alleged that said blasting operations were conducted wantonly and recklessly in disregard of plaintiffs' rights and feelings.

Leo Heyn, named as a defendant in the action, was never served and departed this life prior to trial of the action. John Frazee and Frazee Brothers, Contractors, by answer denied all of the allegations of plaintiffs' complaint. The corporation, by answer, denied all of the allegations of the complaint and alleged that the damage, if any, sustained by plaintiffs was occasioned or caused

by individuals, or firms, over whom the Garden of the Gods Village, Inc., had no control.

Approximately eight months after the instant case was filed, defendants in error filed a similar action against Paul Nixon and Philip Nixon. Defendants in the second action filed their answer admitting that they did some blasting on the property of the corporation under the employment of Leo Heyn and John Frazee and denied all other allegations in the complaint filed against them.

At the pre-trial conference held in these cases they were ordered consolidated for the purpose of trial to a jury. The trial resulted in a verdict in favor of plaintiffs against the corporation in the sum of $9,153.65 actual damages and $100.00 exemplary damages. No verdict was rendered against Paul Nixon and Philip Nixon, or against John Frazee and Frazee Brothers, Contractors. Judgment was entered upon the verdict against the corporation, and it is here on writ of error to review the judgment against it.

The land in question is in the red sandstone area on the southern boundary of the Garden of the Gods and on the east side of Beckers Lane, a street running north and south in the City of Manitou Springs. Plaintiffs' property is located on the west side of Beckers Lane and the improvements consist of a long cinder block building, constructed in 1948 and enlarged in 1950. This structure serves as a residence of plaintiffs and as a pottery factory known as the Garden of the Gods Pottery. In the building is the plaintiffs' kiln in which the pottery items are fired. The heat in the kiln was controlled by a pyrometer, a delicate instrument necessary to the proper operation of the kiln.

Heyn, who was president of the defendant corporation, owned and controlled practically all of its issued stock and was the only individual, who on behalf of the corporation directed and supervised the work incident to the improvement of the land in Garden of the Gods Village Addition No. 1. The corporation was engaged in devel-

oping its real estate for the purpose of subdividing it into lots to be sold to the public. In order to accomplish this objective on the rocky land it was necessary that certain leveling operations be carried out. The Frazee Brothers, Contractors, were hired to do this leveling work under the direction of Heyn. Some of the rocks were so large that they could not be removed without blasting. At the instance of Heyn, Frazee Brothers contacted Paul Nixon, and Philip Nixon to ascertain if they would undertake the blasting operations. It appears that the Nixon Brothers were experienced and qualified operators in the blasting field. The Nixons contacted Mr. Heyn and shortly thereafter commenced the work necessary to blasting on the corporation's property. On July 10, 1953, the first charges were exploded, and during the ensuing week several other charges were exploded, which, according to the plaintiffs, caused the damage complained of. Plaintiffs' testimony disclosed that one of the blasts was exceedingly heavy and rocks, stones and debris dislodged thereby landed on the roof of their property, one of such rocks penetrating the roofing material and lumber which composed the roof. Plaintiffs' testimony further disclosed that the temperatures in the kiln were controlled by a pyrometer and the kiln and pyrometer were damaged as a result of the blasting operations conducted on the property of the corporation. The walls of plaintiffs' building were cracked; leaks occurred in the roof of the building and for a considerable period of time plaintiffs were unable to conduct their business because of the damage to the pyrometer and kiln.

It appears from the record that prior to July 10, 1953, Mr. Heyn had applied to the city clerk of Manitou Springs, Colorado, for a permit to conduct blasting operations on the corporation's property, and on July 10, 1953 he sent one of the Frazee Brothers to the office of said city clerk to obtain the permit. The city clerk was unwilling to issue the permit without the personal presence of Mr. Heyn and caused it to be issued to Frazee Broth-

ers, contractors, and Frazee delivered the permit to Mr. Heyn. Prior to that time and at the instance of Mr. Heyn, John Frazee approached Paul Nixon to inquire whether or not he would be willing to undertake the blasting operations on the corporation's property. As a result Nixon contacted Mr. Heyn; agreed to undertake the blasting and was paid by the hour for his work. There was no general contractor on the job and Mr. Heyn was present during most of the blasting operations, supervised the work and directed Nixon where to place the shot holes. It appears that Mr. Nixon indicated that something over a hundred holes should be drilled and smaller charges of blasting material placed in each of them, but Mr. Heyn was unwilling to comply with this suggestion, because "he did not feel like putting that much into these lots—that they wasn't worth it." Mr. Nixon, according to the record, explained to Mr. Heyn that this was a safety measure and that to put in a large number of holes would result in smaller particles of rock and other materials, which could be more easily gathered and removed after the blasting was completed.

It is contended by counsel for the corporation that the court erred in giving instruction No. 7, and that instruction No. 12 is in conflict with No. 7. It is also contended that the trial court erred in giving instruction No. 6, which authorized the jury to return a verdict awarding exemplary damages. It is also contended that the trial court erred in overruling the corporation's motion for a directed verdict in its favor because (a) no negligence was shown, and (b) defendant acted thru an independent contractor.

Other claimed errors are specified, but we find them to be without merit.

Instruction No. 7 given by the court, reads as follows:

"If you find that one or more of the defendants conducted or caused to be conducted blasting operations on the premises of the Garden of the Gods Village, Inc. and that by reason of such blasting operations the plain-

tiffs were injured by the throwing of dirt, rock or stones upon their premises and by concussion or vibration from explosions, then you should find in favor of the plaintiffs and against such defendants as may have conducted or caused to be conducted such blasting whether it was done negligently or not and without regard to the proportion of damages caused by dirt, rock or stone on one hand and concussion or vibration on the other. If you find that such blasting was done, but did not involve the throwing of any dirt, rock or stones on plaintiffs' premises, then in order to find for the plaintiffs, you must also find that the blasting was done negligently."

Instruction No. 12 as given by the court reads as follows:

"You are instructed that if you should find in favor of the plaintiffs that the damages you award to them must be a direct and proximate cause of any negligence on the part of the defendants or one or more of them which the plaintiffs have proved by a preponderance of the evidence and you are further instructed that you may not speculate as to any damages but any damages awarded must have been proved by a preponderance of the evidence."

Counsel for the corporation contend that the plaintiffs' claim for damages had to be based on negligence, hence it is argued that instructions No. 7 and No. 12 are inconsistent and constitute prejudicial error.

■ Where damage to property is done by vibration or concussion from blasting operations it has been held or recognized in many jurisdictions that there is liability irrespective of negligence, while in others it is held otherwise. The better reasoned cases, we believe, incline to the view that proof of negligence is unnecessary to establish liability under circumstances such as are present in the instant case.

■ A showing of negligence is not essential to the liability of a party who uses the inherently dangerous agency of powerful explosives on his land in such a way

that the proximate result thereof is injury to the property of another from concussion and vibration of the earth and air, without physical invasion of the adjoining premises of the injured party.

We hold that the plaintiffs' right to protection extended to the particular hazard of concussion and vibration as well as to the invasion of their property by rocks, stones and debris. One who uses blasting material likely to cause damage to adjoining property is liable, if damage to such adjoining property results, whether from direct impact of rocks thrown out by the explosion or from concussion and vibration.

In *Patrick v. Smith*, 75 Wash. 407, 134 Pac. 1076, it was said:

"It seems illogical to say that if one puts off a blast of powder, a substance inherently dangerous, on his own premises, which causes a stone to be thrown through his neighbor's window, he is liable without regard to the degree of care used; but if it destroys his neighbor's house, but casts no physical substance upon the premises, he is immune from liability unless it can be shown that reasonable care was not exercised."

The same rule was announced in *Schade Brewing Co. v. Chicago, M. & P. S. R. Co.*, 79 Wash. 651, 140 Pac. 897.

In *Watson v. Mississippi River Power Co.*, 174 Iowa 23, 156 N.W. 188, it was said:

"The employment of force of any kind which, when so put in operation, extends its energy into the premises of another to their material injury, and renders them uninhabitable, is as much a physical invasion as if the wrongdoer had entered thereon in person and by overpowering strength had cast the owner into the street."

See, also, Section 519, Restatement of the Law of Torts; *Hickey v. McCabe and Behler*, 30 R. I. 346, 75 A. 404; *Colton v. Onderdonk*, 69 Cal. 155, 10 Pac. 395; Prosser on Torts, pages 331-333.

The Supreme Court of Utah in *Madsen v. East Jordan Irr. Co.*, 101 Utah 552, 125 P. (2d) 794, aptly states the

distinction between the two lines of cases on the subject. We quote from the opinion:

"It is conceded that the rule of absolute liability prevails when one uses explosives and the blasting of said explosives results in hurling of rocks, earth or debris which causes injury to another. 22 Am. Jur. Explosions, p. 179, paragraph 53; 25 C.J. 192. The weight of authority sustains the position that there is no distinction in liability for damage in nonconcussion and concussion cases. The majority rule, led by California, prevails in 14 jurisdictions.

"The minority rule, led by New York, holds that negligence must be alleged in concussion cases. These jurisdictions do not concede liability in blasting cases where damage is caused by shock or air vibrations rather than the hurling of rock, earth or debris. This distinction is based upon the historical differences between the common-law actions of trespass and case. There is no practical difference between liability occasioned by blasting which projects rocks on another's property or by creating a sudden vacuum and resulting concussion. 92 A.L.R. 742. * * * Whether the cases are concussion or nonconcussion, the results chargeable to the nonnegligent user of explosives are those things ordinarily resulting from an explosion. Shock, air vibrations, thrown missiles are all illustrative of the anticipated results of explosives; they are physical as distinguished from mental in character."

We choose to follow the weight of authority. We so indicated in the recent case of *Cass Company Contractors v. Coalton,* 130 Colo. 593, 279 P. (2d) 415. In that case there existed two bases on which judgment for the plaintiff was proper. One was the "inherently dangerous operations" and the other was the "negligence of the operation."

The recent case of *Bedell, et ux. v. Goulter, et al.,* 199 Ore. 344, 261 P. (2d) 842 (decided in October, 1953), carefully reviews the cases. It holds: " * * * the rule of

liability should be the same whether the blaster injures his neighbor's land by casting rocks, debris or other material on it or by setting in motion concussions or vibrations of the earth or air. In neither case is it necessary for plaintiff to allege and prove negligence."

In the instant case rocks, stones and debris were thrown upon plaintiffs' property as a result of the blasting complained of. In addition there were vibrations and concussions which resulted in damage not only to plaintiffs' building but to the kiln and pyrometer situate therein. Plaintiff in error made no attempt to refute the testimony of the damage sustained by plaintiffs. True, certain testimony was objected to, but we have carefully considered the entire record and do not find that prejudicial error intervened in connection with the introduction of any of the evidence offered by plaintiffs.

Upon the record as submitted the Nixon Brothers were not independent contractors. They were hired at a stipulated wage per hour and were supervised in every detail by Heyn, who on the day the heavy blast occurred determined (contrary to the suggestions of one of the Nixons) that only four or five holes should be fired instead of a hundred or more as suggested by Nixon. Heyn did not want to incur the expense of the additional holes because it would cost too much. The Nixons being employees and servants of the corporation, it was liable for any damage resulting from their operations, especially as they acted in obedience to the directions of Mr. Heyn.

There are certain well recognized exceptions to the general rule exempting an owner of property from liability for acts of an independent contractor. " * * * the rule absolving the owner from liability for an independent contractor's negligence does not prevail where, under the circumstances, the blasting is intrinsically dangerous or a nuisance, as where it is performed in dangerous proximity to persons rightfully upon a public highway or to the residences adjoining the highway. Nor

does the rule apply where the contract with the independent contractor specifies that the work shall be done in a particular way, which is itself negligent, although no further control is exercised over the blasting. * * * Moreover one is not relieved from liability for injuries negligently caused by blasting by the fact that he has employed an independent contractor to do the work, if he is himself controlling the work in whole or in part. * * * Where the liability for injury is not predicated upon negligence but upon the performance of the very thing which the independent contractor was employed and expected to do, the employer is liable." 22 Am. Jur., Sec. 55, pages 182-183.

█ In the instant case the blasting operations were undertaken in a substantially settled community in the city of Manitou Springs, near enough to the property of others to do injury unless proper precautions were taken to prevent injury. The person causing blasting to be done assumes an obligation not to injure his neighbor's property and he cannot relieve himself of liability by showing or attempting to show that the work was done by an independent contractor. See annotation in 65 L.R.A. 753, 754.

When work to be done is dangerous in itself, or is of a character inherently dangerous unless proper precautions are taken, an employer cannot evade liability by engaging an independent contractor to do such work. *Langrell v. Harrington,* 42 Del. 547, 41 A. 2d 461.

█ It is contended that the trial court erred in admitting testimony of statements made by Heyn during the course of these operations and after plaintiffs discovered their damage. It is suggested that the evidence violated the dead man's statute. Not so. Heyn was the President and operating manager of the corporation and the corporation was a defendant in the action. That Heyn had departed this life prior to the trial was no reason why his statements, binding upon the corporation, could not be placed before the jury. The plaintiffs'

case was not, as stated in the brief of counsel for plaintiff in error, "based solely on what a dead man said."

Plaintiffs' case was predicated on two theories; that defendant "negligently and carelessly set off or caused to be set off explosives, and conducted or caused to be conducted blasting operations" on the property it owned.

Holding as we do that plaintiffs were not required to prove negligence on the part of the corporation, we observe no prejudicial error in the giving of instructions numbered 7 and 12. These instructions placed an additional burden upon plaintiffs and hence were favorable to the defendant corporation and it may not now be heard to complain because a stricter rule was invoked against plaintiffs. Although we have held it to be unnecessary to sustain a verdict for plaintiffs, there is competent evidence in the record to sustain a finding that the blasting operations were negligently carried on, resulting in substantial damage to plaintiffs.

■ The evidence in the record clearly shows that the president and general manager of the corporation deliberately set aside the suggestion of an experienced blaster and chose to do the work by heavily loading four or five holes rather than the safer method of a smaller load in a larger number. This evidence justified the jury in returning a verdict for the very modest sum of $100.00 which was awarded as exemplary damages. We perceive no error in submitting the instruction on exemplary damages to the jury.

The judgment is affirmed.