AMERICAN COATED FABRICS COMPANY *vs.* BERKSHIRE APPAREL CORPORATION.

Suffolk. January 6, 1972. — February 11, 1972.

Present: CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Negligence*, Independent contractor, One owning or controlling real estate, Water pipe.

Where a defendant hired an experienced independent contractor to remove air-conditioning equipment from its premises, such work not being inherently or intrinsically dangerous, and the plaintiff's goods were damaged by water flowing from the defendant's premises onto the plaintiff's premises on a floor below as the result of the unskilled act of a servant of the contractor in cutting a pipe, it was error to deny the defendant's motion for a directed verdict; there was no duty on the part of the non-expert employees of the defendant to warn the experienced independent contractor. [167–168]

TORT. Writ in the Superior Court dated April 8, 1967. The action was tried before *Linscott, J.*
*Simon Scheff* for the defendant.
*George F. Hurley* for the plaintiff.

BRAUCHER, J.  This is an action of tort for damage caused to the plaintiff's goods by water which flowed from the defendant's premises onto the plaintiff's premises on a floor below.  The water came from a pipe cut by the employees of an independent contractor, Wakefield, employed by the defendant.  The defendant and Wakefield were found liable by the jury for negligence, and the case against Wakefield was subsequently settled.  The case is here on the defendant's exceptions, and we consider only its exception to the denial of its motion for a directed verdict.

We summarize the evidence most favorable to the plaintiff.  Wakefield was an experienced contractor, having· been a heating, air-conditioning and sheet metal contractor in Maine for twenty years.  The defendant hired him to move its air-conditioning equipment from Boston to Maine.  Early in June, 1966, Wakefield removed all the air-conditioning units from the fifth floor of a building in which the plaintiff occupied the first floor. The units were water cooled, and at the time they were disconnected they were not in operation and were void of water.  Wakefield could not remember there being any water in the pipes.

Wakefield's men left a feed line that had supplied water to one of the units so that a portion of it was hanging from the ceiling to about two and one-half to three feet above the floor.  When the defendant's vice-president complained, Wakefield said it was not economically feasible to come down from Maine to remove the hanging pipe, and requested that the defendant hire a local plumber at Wakefield's expense.  The defendant's purchasing agent hired a local plumber, and instructed him to cut off the hanging pipe at the elbow where it hung down and to cap it.  He did not watch the work, but did observe the com-

pleted job. He "believed" that the pipe had water in it from the main to the cap.

The defendant's vice-president knew that Wakefield was to come back on July 21, 1966, and Wakefield did return with two young helpers to complete his contract by removing air-conditioning units from an adjoining building and removing pipes, wiring and the like. The helpers, under Wakefield's instructions but in his absence, cut the same feed line to which the hanging pipe had been attached, and caused the flow of water onto the plaintiff's premises below.

No test was made by Wakefield or his helpers to determine the presence of water in the pipe. Good practice required such a test. A simple test would have been to flush a urinal which was connected to the feed line. One of Wakefield's employees had flushed the urinal during the day, but not as a test. There was never any discussion of the presence or absence of water in any of the pipes between Wakefield or his men and any representative of the defendant.

The jury could have inferred that there was no water in the pipes on Wakefield's first visit, and that the defendant thereafter knew that there was water in the particular pipe and that Wakefield was coming back to remove the pipes. The plaintiff argues that the defendant therefore had a duty to warn Wakefield of the changed condition. But there was no evidence that any representative of the defendant knew that Wakefield thought there was no water in the pipe. There is no evidence that the purchasing agent, on whose belief the defendant's imputed knowledge of the water would have to rest, had any expert or other understanding of plumbing or of the pipes in question. He testified without contradiction that he never talked to Wakefield. We think there was no showing that due care required nonexperts to warn the expert contractor.

One who has used due care in selecting and agreeing with an independent contractor to do lawful work is not responsible to third persons for the negligence of the

contractor, unless the nature of the work was inherently or intrinsically dangerous. *Pickett* v. *Waldorf Sys. Inc.* 241 Mass. 569, 570–571. The defendant cannot be held responsible "where the danger does not come from work performed with proper skill and care, 'but comes only from an unskillful or negligent act of the contractor or his servants, even if a lack of skill or care on the part of some of the persons engaged in the business reasonably may be expected.' *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91, 93." *Whalen* v. *Shivek,* 326 Mass. 142, 151. *Todd* v. *Wernick,* 334 Mass. 624, 626–627. *Doyle* v. *LaCroix,* 336 Mass. 484, 487–488, and cases cited. There is no evidence in the record that the plaintiff's damage was caused by anything except such an unskillful act of an independent contractor's servants.

The plaintiff contends that the defendant was negligent in maintaining on its premises a water pipe system which had no means by which the water could be cut off. This contention is outside the allegations made in its declaration, was not put to the jury, and is not supported by the record. It cannot be raised here. *Old Colony R.R.* v. *Rockland & Abington St. Ry.* 161 Mass. 416, 418. See *Socony Mobil Oil Co. Inc.* v. *Cottle,* 336 Mass. 192, 196.

The plaintiff concedes that if the only evidence of negligence was on the part of Wakefield the defendant should have been granted its directed verdict. Such is the case. The defendant's exception to the judge's denial of its motion for a directed verdict is sustained.

*Exceptions sustained.*
*Judgment for the defendant.*