## No. C-1150

## Western Stock Center, Inc. v. Sevit, Inc., d/b/a Adams Box Company, a Colorado corporation

(578 P.2d 1045)

Decided May 15, 1978.                    Rehearing denied June 5, 1978.

Tilly and Graves, Ronald O. Sylling, for petitioner.

Edwin B. Fieman, for respondent.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Certiorari was granted to review the decision of the court of appeals in *Sevit, Inc. v. Western Stock Center, Inc.*, 38 Colo. App. 401, 559 P.2d 1118. We affirm the judgment of the court of appeals.

On July 18, 1973, a fire swept through and substantially destroyed the Swift Building, which was owned by petitioner Western Stock Center, Inc. (Western). Respondent Sevit, Inc., doing business as the Adams Box Company (Sevit), was tenant in the Swift Building at the time. On April 9, 1973, Western had contracted with the S.T.O.P. Corporation (S.T.O.P.) for the removal of various ammonia pipes, valves, and fittings from the Swift Building for salvage purposes. In the course of this work by S.T.O.P., an electric cutting torch was being used and shortly thereafter the fire occurred. As a result of the fire and the subsequent condemnation by the City and County of Denver, Sevit's lease was terminated.

Sevit filed an action against Western, S.T.O.P., and other parties on April 22, 1975. The amended complaint alleged that S.T.O.P., in the process of removing pipe with the electric cutting torch, caused the fire which destroyed the building. The complaint asked for approximately $35,000 for property damage, incidental expenses, and lost profits.

Prior to trial, Sevit settled its claim against S.T.O.P. and its officers for $10,000. The action against Western was tried before a jury on the following three claims for relief: (1) Western's independent negligence in the selection of S.T.O.P. to do the pipe work; (2) Western's vicarious liability for the negligence of S.T.O.P.; and (3) Western's breach of the covenant of quiet enjoyment in its lease with Sevit.

At the close of the evidence, both parties moved for a directed verdict. The court granted Western's motions. The court found that S.T.O.P. was an independent contractor and that there was evidence that S.T.O.P. was negligent in using the electric cutting torch. However, the court held that, since S.T.O.P. was an independent contractor, Western could not be held vicariously liable for S.T.O.P.'s negligence or for breach of the covenant of quiet enjoyment. The court also held that there was no evidence that Western failed to exercise reasonable care in the selection of S.T.O.P.

The court of appeals reversed and remanded for a new trial on all of respondend Sevit's claims. That court held that there was sufficient evidence to require submission of all three claims to the jury.

## I. NEGLIGENCE IN SELECTION

Petitioners' first contention is that the trial court correctly held that there was insufficient evidence to hold it liable for negligence in selecting S.T.O.P. to perform the pipe salvage work. We do not agree and hold that this issue should have been submitted to the jury for determination.

This court has not previously been confronted with the problem of determining the extent of a person's duty to choose a competent independent contractor. As a general rule, the employer has a duty to use

reasonable care to choose a contractor who is properly qualified to perform the work. 41 *Am. Jur. 2d Independent Contractors* §26. One legal commentator has written: "The rule has been widely adopted that an employer of an independent contractor may be liable to one injured as a result of the contractor's fault where it is shown that the employer was negligent in selecting a careless or incompetent person with whom to contract." Annot., 8 A.L.R.2d 267 §1. Courts across the country have uniformly adopted this rule. *E.g., Ozan Lumber Co. v. McNeely*, 214 Ark. 657, 217 S.W.2d 341, 8 A.L.R.2d 261; *Joslin v. Idaho Times Publishing Co.*, 60 Idaho 235, 91 P.2d 386; *American Coated Fabrics Co. v. Berkshire Apparel Corp.*, 361 Mass. 165, 279 N.E.2d 695; Annot., 44 A.L.R. 932 §14. ployed to do without creating unreasonable risk of injury to others* * *."

In addition to the duty to carefully select a properly qualified contractor, if the activity is potentially dangerous the employer also has a duty to explore the contractor's "fitness and ability to operate safely." *Joslin v. Idaho Times Publishing Co., supra.* The Second Restatement of Torts has appropriately summarized this duty by stating that the employer must choose "* * * a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others* * * ." *Restatement (Second) of Torts* §411 (Comment a). Implicit in this duty is the requirement that sufficient inquires must be made concerning the contractor's ability to do the work in a competent and careful manner. *See* Annot., 8 A.L.R.2d 267 §5.[1]

This duty to carefully select an independent contractor extends to third parties who are within the zone of foreseeable risk. A tenant of a building is certainly within the class of persons protected when his landlord negligently employs an independent contractor to perform work upon that building. The landlord-tenant relationship as such, however, is not the basis for our holding on this claim.[2]

To recover, it must be shown that the employer's negligence was the proximate cause of the injury to the third person. More specifically, it must be demonstrated that the harm resulted from some quality in the contractor which made it negligent for the employer to entrust the work to

---

[1] Our courts have followed a similar rule in the closely analogous area of master and servant. A master who negligently selects a careless or incompetent servant is independently liable in tort to third persons who suffer injury as a result of the negligent selection. *Colwell v. Oatman*, 32 Colo. App. 171, 510 P.2d 464. *See* 53 *Am. Jur. 2d Master and Servant* §422. This liability is distinct from and additional to vicarious liability for the servant's negligence under the doctrine of respondeat superior. The extent of the master's duty is to "exercise the care of a reasonably prudent person in selecting employees." *Colwell v. Oatman, supra.*

[2] The specific obligation of a landlord to a tenant is covered in section IV with respect to the covenant of quiet enjoyment.

him. *Restatement (Second) of Torts* N411 (Comment b). Further, we hold that recovery may be had for damage to the tenant's property and for incidental and consequential damages.

In the present case, viewing the evidence in the light most favorable to the party against whom the motion for directed verdict was made, *Romero v. Denver and Rio Grande Western Ry. Co.,* 183 Colo. 32, 514 P.2d 626, it appears that the landlord made no check of the competency or carefulness of the independent contractor before employing it. In addition, there is evidence to support the contention that the landlord knew that an electric cutting torch was to be used and that the walls of the building consisted of wood and cork permeated with grease. On inquiry, Western could have readily discovered that S.T.O.P. was not experienced in doing this kind of work with an electric cutting torch. These facts certainly presented a prima facie case and required the trial court to submit to the jury the issue of Western's prudence in selecting S.T.O.P. to do the pipe salvage work.

## II.   NEGLIGENCE IN SUPERVISION

In the course of its holding on the negligent selection issue, the court of appeals commented that Western could also be held liable for failure to properly supervise S.T.O.P.'s work. We do not agree and hold that Western had no duty of supervision under the facts of this case.

S.T.O.P. was an independent contractor which retained, as the court of appeals pointed out, "the sole and exclusive right in all essential respects to control the manner in which the work was to be done and the owner's [Western's] concern was only with the end product or final result." Since S.T.O.P. had exclusive control over the manner of doing the work Western had no obligation to supervise it. This balance of responsibility is implicit in the employer-independent contractor relationship.

In addition, Western did not undertake any independent contractual obligation to supervise S.T.O.P.'s work. One provision in the agreement between Western and S.T.O.P. did provide that Western "Shall have the right to inspect the premises from time to time during the term of this agreement * * *." This right of inspection, however, did not impose upon Western a duty of supervision. The Supreme Court of Washington has aptly commented that: "The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship." *Epperly v. City of Seattle,* 65 Wash. 2d 777, 399 P.2d 591. *See also* 41 *Am. Jur. 2d Independent Contractors* §10. Thus, under these circumstances, Western cannot be held liable for a failure to properly supervise S.T.O.P.'s work.

## III.   VICARIOUS LIABILITY

Petitioner's next contention is that it cannot be held vicariously liable for the negligence of S.T.O.P. because S.T.O.P. was an independent contractor. The general rule is that one who employs an independent

contractor is not liable for torts committed by the independent contractor or its servants. *Thayer v. Kirchhof,* 83 Colo. 480, 266 P. 255; *Simpson v. Digiallonardo,* 29 Colo. App. 556, 488 P.2d 208; *see* 41 *Am. Jur. 2d Independent Contractors* §24. We perceive no reason to disturb the trial court's finding that S.T.O.P. was an independent contractor.

One widely recognized exception to this general rule imposes liability on an employer when the activity which the independent contractor is to perform is "inherently dangerous." Colorado has recognized this important exception to the general rule of employer non-liability. *Garden of the Gods Village v. Hellman,* 133 Colo. 286, 294 P.2d 597. This exception has been adopted in jurisdictions across the country. *E.g., American Automobile Insurance Co. v. Fidelity & Casualty Co.,* 247 F.2d 185 (10th Cir.); *Anderson v. Chancellor Western Oil Development Corp.,* 53 Cal. App. 3d 235, 125 Cal. Rptr. 640; *Reilly v. Highman,* 185 Kan. 537, 345 P.2d 652; *Newcomb v. Dredge,* 105 Ohio App. 417, 152 N.E.2d 801. *See J. Page, The Law of Premises Liability* §9.23 41 *Am. Jur. 2d Independent Contractors* §41; Annot., 24 A.L.R.2d 241 §33. When this exception is applicable, "the law invokes the theory of respondeat superior, imposing the master-servant relationship upon the parties engaged in the activity * * *." *Epperly v. City of Seattle,* 65 Wash. 2d 777, 399 P.2d 591. The exception was adopted by the Second Restatement and reads as follows:

"§427. Negligence as to Danger Inherent in the Work

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

*Restatement (Second) of Torts* §427.[3]

█ A difficult question is what constitutes an "inherently dangerous" activity. The authors of the Second Restatement comment that: "The rule apples equally to work which, although not highly dangerous, involves a risk recognizable in advance that danger inherent in the work itself, or in the ordinary or prescribed way of doing it, may cause harm to others." *Restatement (Second) of Torts* §427 (Comment c). Thus, an inherently dangerous activity need not be extremely or even highly dangerous, but must only present a foreseeable and significant risk of harm to others if not carefully carried out. The determination of what constitutes an inherently dangerous activity should be made by the trier of fact, which is in

---

[3] Although §427 is limited to physical harm, its rationale is applicable to other types of damages when an independent contractor employed by the landlord causes harm to a tenant.

the best position to evaluate the inherent danger of the work in different circumstances. *Accord, Schultz & Lindsay Construction Co. v. Erickson,* 352 F.2d 425 (8th Cir.).[4]

It is important not to confuse the "inherently dangerous" exception with the "ultrahazardous activity" rule applied in real property trespass cases. In Colorado, blasting with dynamite and impounding water have been held to be ultrahazardous activities. *Garden of the Gods Village v. Hellman,* 133 Colo. 286, 294 P.2d 597; *Cass Company-Contractors v. Colton,* 130 Colo. 593, 279 P.2d 415. Landowners who carry on these ultrahazardous activities on their land are strictly liable for all damages proximately caused to others by the activities. Thus, liability is imposed on the landowner regardless of whether he was negligent in conducting the activity. In contrast, under the "inherently dangerous activity" rule, an employer is only liable for damages if the independent contractor is negligent in performing the work. As with the doctrine of respondeat superior, the "inherently dangerous" exception is not a strict liability concept.

In the present case, it is clear that the vicarious liability issue should have been submitted to the jury. There is sufficient evidence that the independent contractor was negligent and that this negligence proximately caused damage to the tenant. There is also sufficient evidence from which a jury could conclude that use of an electric cutting torch in these circumstances was inherently dangerous. We also hold that the liability imposed may permit recovery for property damage as well as for incidental and consequential damages when an independent contractor employed by a landlord causes damage to a tenant.

## IV. COVENANT OF QUIET ENJOYMENT

Unless expressly agreed otherwise, there is an implied covenant of quiet enjoyment in every lease of real property in Colorado. *Radinsky v. Weaver,* 170 Colo. 169, 460 P.2d 218; *Boyle v. Bay,* 81 Colo. 125, 254 P.156. The covenant of quiet enjoyment is breached by "any disturbance of a lessee's possession *by his lessor* which renders the premises unfit for occupancy for the purposes for which they were leased, or which deprives the lessee of the beneficial enjoyment of the premises, causing him to abandon them * * *." (Emphasis added.) *Radinsky v. Weaver, supra.* The crucial issue for purposes of this case is whether the disturbance of the tenant's possessory interest is attributable to the landlord.

It is important to note that Sevit was only renting the northeast corner of the ground floor of the multi-story Swift Building. S.T.O.P. was

---

[4] One court has appropriately commented that: "Work not inherently dangerous under some circumstances may be inherently dangerous under other circumstances. Thus, construction work near a street or sidewalk may, by reason of proximity to the street or sidewalk, be inherently dangerous." *Fegles Construction Co. v. McLaughlin Construction Co.,* 205 F.2d 637 (9th Cir.).

removing pipe on another floor of the large building and would not have interfered with the possessory interest of Sevit if it had done the pipe removal work carefully.

In such a case, the usual test for liability of the landlord is "whether or not the independent contractor might have performed the contract with the lessor without trespassing upon the leased premises or interfering with the lessee's enjoyment thereof." 49 *Am. Jur. 2d Landlord and Tenant* §343. Thus, if the independent contractor could have performed the work without interference, the landlord will not be liable for breach of the covenant of quiet enjoyment. *Accord, Nahm & Friedman v. Register Newspaper Co.,* 120 Ky. 485, 87 S.W. 296. Since S.T.O.P. could have performed the pipe salvage work without interfering with Sevit's enjoyment of the leased premises, Western cannot ordinarily be held liable for breach of the covenant of quiet enjoyment.[5]

Nonetheless, if Western is determined to have been negligent in selecting an incompetent or careless independent contractor who performed the work in such a manner as to result in interference with the peaceful enjoyment of Sevit's leased premises, then Western is responsible for breach of the covenant of quiet enjoyment.

In summary, since S.T.O.P. could have performed the work without interfering with the possessory rights of Sevit, Western can only be found liable for breaching its covenant of quiet enjoyment if it is found to be negligent in its selection of S.T.O.P. as an independent contractor.

Accordingly, the judgment of the court of appeals is affirmed.

MR. CHIEF JUSTICE PRINGLE does not participate.

---

[5] The case of *Radinsky v. Weaver, supra,* provides an interesting contrast. In that case, the landlord decided to build a second story on a one-story building used by the tenant as a printing plant. There was no independent contractor involved. Nonetheless, it was clear that no matter who performed the work, and whether it was negligently done, the work would inescapably have interfered with the tenant's quiet enjoyment of the premises. In such a case, the landlord is liable for a breach of the covenant of quiet enjoyment.