Jami N. HUDDLESTON and Jennifer B. Huddleston, Minors, by their parent and next friend, Judith C. HUDDLESTON, Plaintiffs–Appellees,

v.

UNION RURAL ELECTRIC ASSOCIATION, Defendant–Appellant.

No. 90CA398.

Colorado Court of Appeals, Division II.

June 20, 1991.

Rehearing Denied July 25, 1991.

Certiorari Granted Jan. 13, 1992.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo.Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Breit, Best, Richman and Bosch, P.C., Susan Smith Fisher, Frank W. Coppola, Denver, Colo., for plaintiffs-appellees.

Hall & Evans, Alan Epstein, Peter F. Jones, Robert J. McCormick, Denver, for defendant-appellant.

Opinion by Judge SMITH.

Union Rural Electric Association (UREA) appeals the judgment entered on a jury verdict awarding plaintiffs, Jami and Jennifer Huddleston, surviving minor children of James Douglas Huddleston, $525,000. We reverse and remand with directions.

On the morning of January 28, 1987, a single engine airplane, chartered by UREA and piloted by Charles Brooks, departed the Jefferson County Airport for an intended arrival in Nucla, on Colorado's western slope. On board were the minor plaintiffs' father, who was a paid consultant to UREA, the pilot Brooks, and two UREA board members. At the time of the airplane's departure, the National Weather Service reported to the pilot that there were clouds, ice, and turbulence in the vicinity of the Nucla airport; however, the record contains no evidence that these facts were disclosed to UREA or the passengers prior to the flight. Proceeding under instrument flight rules, the plane crashed into a mountain as it neared the Nucla Airport. All four passengers were killed.

Plaintiffs filed a wrongful death claim against UREA, alleging that UREA had been negligent in selecting and hiring Brooks. Alternatively, the plaintiffs alleged that UREA was vicariously liable for the negligent acts of Brooks, despite Brook's status as an independent contractor, because the activity which UREA had

contracted Brooks to perform was inherently dangerous. UREA moved for summary judgment on both claims. The trial court granted UREA's motion with respect to the claim for negligent selection only. That decision has not been appealed.

Prior to trial, the parties stipulated to the following facts: The airplane crashed as a direct result of the carelessness and negligence of Brooks; the negligence of Brooks was the proximate cause of the crash of the airplane that caused the death of Huddleston; and Brooks was an independent contractor.

At trial, UREA's executive secretary, who was responsible for arranging the contract with Brooks, testified regarding the parties' arrangements. UREA's interim manager also testified. Finally, an expert in aviation opined that flying under instrument flight rules in the mountains in the winter could be dangerous and, if reasonable care was not exercised, presented a foreseeable risk of harm.

At the close of the evidence, UREA moved for a directed verdict which, after lengthy argument, was denied. The jury was then instructed to determine whether the flight which UREA contracted Brooks to perform was inherently dangerous if not carefully carried out. The jury answered this question in the affirmative and awarded damages to the plaintiffs in the amount of $525,000.

The sole issue presented on appeal is whether the trial court erred in denying UREA's motion for a directed verdict on the plaintiffs' claim that UREA was vicariously liable.

■ An employer's vicarious liability for inherently dangerous activities is a well recognized exception to the general rule that one who engages an independent contractor is not liable for the torts committed by the independent contractor or his servants. *Western Stock Center v. Sevit, Inc.*, 195 Colo. 372, 578 P.2d 1045 (1978); Restatement (Second) of Torts § 427 (1965).

■ Consistent with the public policy that an employer cannot "divest" itself of the responsibilities and duties it owes to members of the community by contracting with others for the performance of activities which necessarily or probably will result in injuries to third parties, *see Fegles Construction Co. v. McLaughlin Construction Co.*, 205 F.2d 637 (9th Cir.1953), this exception holds an employer liable for injuries caused by an independent contractor's negligence, regardless of the employer's own lack of fault, if the contract calls for the performance of an activity which is "inherently dangerous." *Western Stock Center, supra*.

■ It is generally accepted that the proper test to determine whether an activity is "inherently dangerous" is whether danger "inheres" in performance of the activity no matter how skillfully performed, not necessarily because the activity is highly dangerous but because of the contemplated conditions under which the activity is to be done or the known or foreseeable circumstances attending it. Restatement (Second) of Torts § 427 comment b and c (1965); *see also Western Stock Center, supra; Bosak v. Hutchinson*, 422 Mich. 712, 375 N.W.2d 333 (1985).

■ Thus, "simply designating an activity as inherently dangerous does not make it so." *Hofstetter v. Union Electric Co.*, 724 S.W.2d 527 (Mo.App.1986). Moreover, if there is a way to perform the contracted activity without danger, *Johns v. New York Blower Co.*, 442 N.E.2d 382 (Ind.App. 1982), or if injurious consequences are not more than a possibility when the independent contractor exercises reasonable care, *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983), then the activity is not "inherently dangerous." Likewise, if the danger relates solely to an unforeseen and uncontemplated risk created by the improper way in which the independent contractor performs the "operative details" of the contracted activity, the activity is not "inherently dangerous". *Marshall v. Southeastern Pennsylvania Transportation Authority*, 587 F.Supp. 258 (D.Pa. 1984); Restatement (Second) of Torts § 427 comment d (1965).

In light of the foregoing, it is apparent that an activity which is not inherently dangerous under some circumstances may be inherently dangerous under others. *Western Stock Center, supra.* Accordingly, the determination of whether an activity is "inherently dangerous" may involve the resolution of factual issues which should be made by the finder of fact. However, what might at first appear to be a factual issue becomes an issue of law if "the historical facts are undisputed and reasonable minds could not differ on the ultimate fact." *Donovan v. General Motors,* 762 F.2d 701 (8th Cir.1985).

The issue before us is, thus, whether the specific terms and details of the contracted activity were, indeed, in dispute based on the evidence and, if not, whether reasonable minds could differ on whether, under such terms and detail, the contracted activity was "inherently dangerous."

Here, the record is void of any written agreement between UREA and Brooks detailing the planned flight. However, unlike the trial court, we perceive no disputed material facts as to its terms.

A review of the testimony presented by UREA's representatives reveals that chartering the January 28 flight was part of an overall plan by UREA to meet with a number of rural electric associations to gain support for pending legislation. As part of this plan, UREA had on two prior occasions contracted with Brooks to fly UREA board members from Jefferson County to the western slope.

Sometime during the third week in January, UREA's executive secretary again contacted Brooks for the same purpose, this time to fly the board members and Huddleston to Nucla for a meeting with the San Migual Power Association. The secretary testified that, at this time, she obtained the prices for both a single and twin engine plane. The secretary also testified that she was aware that mountain flying in a small plane could be dangerous but that she relied on Brooks to make weather-related decisions, including cancellation, in connection with planned flight.

The only other related facts regarding the terms and details of UREA's contract with Brooks was the testimony of UREA's interim manager that he, too, knew that it was dangerous to fly in the winter in a small plane if the weather was bad. He further testified, however, that UREA always considered the safety of the people who were going to fly and that, if the weather was bad, UREA's policy was not to proceed with the scheduled flight. Indeed, the secretary testified that she had spoken with the San Migual Power Association prior to January 28 to inform them that they would be notified if UREA canceled at the last minute.

In construing a contract, the court must primarily consider the objects and purposes the contract was intended to accomplish. *Lorenzen v. Mustard's Last Stand, Inc.* 196 Colo. 265, 586 P.2d 12 (1978). And, inasmuch as contract construction is a matter of law, the appellate court is not bound by the findings and conclusions of the trial court. *Buckley Bros. Motor v. Gran Prix Imports,* 633 P.2d 1081 (Colo.1981).

Here, we conclude that the evidence clearly reveals that the explicit objective and purpose of UREA's contract with Brooks was to transport Huddleston and the two UREA board members from Jefferson County to Nucla on January 28, 1987. We further conclude that it is implicit from the testimony regarding UREA's policy of cancellation that a closely related objective and purpose of the contract was that the passengers be transported *safely.*

We do not perceive from the evidence any indication that UREA's expectations under the contract were that Brooks was to fly regardless of weather conditions. On the contrary, the undisputed testimony indicates that UREA was ready and willing to cancel the flight if Brooks indicated that weather conditions so required. Moreover, as demonstrated by the secretary's call to Brooks the day before the flight, UREA relied on Brooks to assess the significance of weather conditions on the flight. Indeed, the secretary's testimony was, specifically, that Brooks reassured her he would

check weather conditions prior to departing on the following day.

Accordingly, we determine that the contract required, as disclosed by clear and undisputed evidence, simply that Brooks safely transport Huddleston and two UREA board members from Jefferson County to Nucla on January 28, 1987, in a chartered single engine airplane and that it was not a condition of the contract that Brooks proceed with the flight regardless of existing weather conditions.

As to the "inherently dangerous" issue, we further hold that, unlike the contracted activity at issue in *Western Stock Center, supra,* reasonable minds could not differ in determining that this activity itself was not "inherently dangerous."

Statistics show that air transportation is far safer than automobile transportation, *Crosby v. Cox Aircraft Co.,* 109 Wash.2d 581, 746 P.2d 1198 (1987), and so common that it cannot be considered inherently dangerous. *Little v. McGraw,* 250 Ark. 766, 467 S.W.2d 163 (1971).

Indeed, flying a small airplane over the Colorado mountains in the winter is an activity which is performed regularly by private individuals, charter services, and commercial airlines. And, based upon the expert testimony here, if proper precautions are taken, that is, if the pilot exercises reasonable care, the flight can be performed without danger. Even plaintiffs' expert, who testified concerning inherent dangers, conceded this point. Thus, from the testimony presented, reasonable persons could not differ on the issue of whether the contracted activity was inherently dangerous.

In sum, we hold that the crash of the flight which UREA contracted with Brooks to perform and the resulting death of Huddleston were the direct result of Brooks' failure to exercise reasonable care in the "operative" details of the contracted activity, specifically, to proceed with the flight in light of existing weather conditions. This negligent decision gave rise to a new risk which was neither foreseeable nor contemplated by UREA when it entered into the contract with Brooks to fly the passengers from Jefferson County to Nucla on January 28, 1987, a contract which, in and of itself, did not call for the performance of an inherently dangerous activity.

Hence, under the circumstances of the present case, and the conclusions which we have drawn, we hold, as a matter of law, that the UREA was not vicariously liable under the "inherent danger" exception to the general rule of employer non-liability. Thus, it was error for the trial court to deny UREA's motion for directed verdict and to submit that issue to the jury.

The judgment is reversed, and the cause is remanded with directions to enter judgment of dismissal of plaintiffs' action.

METZGER and MARQUEZ, JJ., concur.