King MORRISON, Harlan Walker, Jerome Powell, William Franklin, Ray Snell, and Terrell Smith, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

The CITY AND COUNTY OF DENVER, Mayor William McNichols, Individually and as Mayor of the City of Denver, Arthur Dill, Individually and as Chief of Police of the City and County of Denver, the Police Department of the City and County of Denver, Dan Cronin, Individually and as Manager of Safety for the City and County of Denver, the Department of Safety, Oswald Abernathy, Ted Bach, and Jesse Manzanarez, Individually and as Commissioners of the City and County of Denver Civil Service Commission, the City and County of Denver Civil Service Commission, Defendants.

Civ. A. No. 77–K–1017.

United States District Court,
D. Colorado.

Nov. 1, 1978.

Gary M. Jackson, Richard A. Winkel, Denver, Colo., for plaintiffs.

Max P. Zall, City Atty., Robert D. Dowler, Stanley M. Sharoff, Asst. City Attys., Denver, Colo., for defendants.

## ORDER RE: PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S ORDER CONCERNING DISCOVERY

KANE, District Judge.

This is an employment discrimination suit brought under Title VII and 42 U.S.C. §§ 1981, 1982, 1985 and 1988. Plaintiffs bring this action as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. They allege a class consisting of all Black persons employed as police officers between January 1, 1965 and the present who are no longer employed by the department; all Black persons who may become employed as police officers in the future; and all Black persons who were deterred from seeking employment as a result of the discriminatory practices complained of in this action.

Plaintiffs allege that defendants have discriminated against them solely because of their race and deprived them of their civil and constitutional rights while employed in the Classified Service of the Denver Police Department. They characterize the discrimination as consisting of certain job assignments, lack of promotion, working conditions and benefits, terminations, suspensions, investigations and harassment. As relief, they seek a declaratory judgment as to the discriminatory nature of defendants' employment practices, reinstatement, exemplary damages, back pay, costs and attorney's fees.

On September 11, 1978 defendants requested a protective order in regard to the following items:

*Interrogatory # 7,* "With respect to those Black police officers employed by the Denver Police Department since 1972, state:

E. Reason for termination;

F. Dates of any and all disciplinary proceedings;

G. Reason for each disciplinary proceeding;

H. Action taken in each disciplinary proceeding;"

*Interrogatory # 14,* "For each person holding the position of detective since 1970, state:

F. If terminated or demoted, the date and reason therefor;"

*Interrogatory # 16,* "With respect to all police officers suspended or terminated pending disposition of criminal charges filed against them, for the period 1972, to the present, state:

A. Name;

B. Race, sex or national origin;

C. Date of suspension or termination;

D. Criminal charges filed;

E. Disposition of criminal charges filed;

F. Rank at the time of discharge, termination, or suspension;

G. Date or [sic] reinstatement;

H. Disposition of departmental disciplinary proceedings against said person;

I. Date of hire;

J. Rank at the time of reinstatement;

K. Whether suspended with or without pay;

L. Whether compensated with back pay upon reinstatement."

*Interrogatory # 32,* "With respect to all persons denied entry to the Department due to unsatisfactory background investigation, since 1970, state:

A. Name;

B. Race, sex or national origin;

C. Date of application;

D. Substance of the background investigation which made them ineligible for employment by the Department."

*Request for Production # 6,* "Provide the background investigation reports of all persons employed by the Department since 1972 whose background investigation report has indicated any type of criminal activity, arrest, juvenile proceedings, or police contact."

The motion was referred to the magistrate's office for determination and on October 4, 1978 a hearing was held before Magistrate Hilbert Schauer. Defendants based their motion for protective orders on the Colorado Public Records Act, C.R.S. 1973, §§ 24–72–204(2)(a)(I), 24–72–204(3)(a)(III) and 24–72–204(6).

The Colorado Public Records Act itself authorizes inspection and affords no basis for defendants' motion. The Act was never intended to thwart discovery in litigation. In fact, ample provision is made in the wording of the statute itself. '73 C.R.S. 24–72–203 provides:

(1) *All* public records *shall* be open for inspection by any person at reasonable times, except as provided in this part 2 *or as otherwise provided by law,* . . ." (Emphasis added.)

The Rules of Civil Procedure are laws which provide for the inspection and discovery of any matter, not privileged, which is relevant to any claim or defense even if such information would be inadmissible at trial so long as it appears reasonably calculated to lead to the discovery of admissible evidence. Since the statute expressly includes inspection as provided by law, I need give it no other construction which would place it in controversy with the Rules of Civil Procedure. Thus, I am not required to address the issue of whether such a state statute could abridge the federal judicial process by prohibiting or limiting discovery. The statute and rules are not in conflict; they are in harmony.

On October 5, 1978 the magistrate granted defendants' motion for protective orders without prejudice, "thus permitting the plaintiffs to reassert their request upon a showing of unavailability by other means and upon submission of an effective and carefully drafted protective order which

may be unobjectionable to the defendants." Plaintiffs have filed an objection to this order which is ripe for determination by this court.

■ Generally, plaintiffs should be permitted a very broad scope of discovery in Title VII cases. Since direct evidence of discrimination is rarely obtainable, plaintiffs must rely on circumstantial evidence and statistical data, and evidence of an employer's overall employment practices may be essential to plaintiff's prima facie case. *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975). The Tenth Circuit has consistently allowed extensive discovery in employment discrimination cases whether the action is brought by an individual or the government holding that "the elimination of employment discrimination, whether practiced knowingly or unconsciously and in relation to employment or advancement criteria which, although neutral on its face, is in fact discriminatory in its application." *EEOC v. University of New Mexico*, 504 F.2d 1296 at 1302 (10th Cir. 1973).

The *University of New Mexico* case, *supra*, dealt with an EEOC subpoena issued demanding copies of personnel files of all persons terminated between 1970 and 1973, and personnel files for all faculty members employed by the defendant as of the date of complainant's termination. The district court enforced the subpoena and the Tenth Circuit affirmed.

In *Joslin Dry Goods. Co. v. EEOC*, 483 F.2d 178 (10th Cir. 1973), EEOC issued a subpoena requesting the hiring and firing practices of all of defendant's stores in the area in an action for wrongful discharge. The district court refused to enforce the subpoena. The Tenth Circuit agreed that the request should have been limited to the store in which the plaintiff was employed, but recognized the relevancy of store-wide inquiry, and in doing so, reversed the district court's ruling that the EEOC was barred from investigating hiring as well as firing practices.

Similarly, in *Circle K Corporation, Inc. v. EEOC*, 501 F.2d 1052 (10th Cir. 1974),

EEOC pursued a broad scope of discovery which consisted of:

> * * * a list of all applicants and present employees subjected to the polygraph examination, their racial-ethnic identity and whether they were accepted or rejected; documentation of the nature, standardization and validity of the polygraph test and a list of questions asked of each applicant; qualifications of the examiners who administered the tests; testimony under oath of all knowledgeable employees and officers; and all related matters.

The district court turned away the demand for access to this information and the Tenth Circuit reversed, refusing to recognize the objections that the information lacked relevancy and was too burdensome.

■ Plaintiffs argue that since the Colorado Public Records Act does not grant absolute privilege for the information being sought, the court has a "duty to make an independent examination of the appropriateness of the privilege by balancing the policies behind the privilege against the policies favoring disclosure." *Fears v. Burris Manufacturing Co.*, 436 F.2d 1357 at 1362 (5th Cir. 1971). In view of provisions of the statute previously described, no such closeting is necessary.

Further, in their opposition to the magistrate's order plaintiffs represent that Denver District Judge Quinn granted plaintiffs similar discovery in *Smith v. City and County of Denver, et al.*, Civil Action No. C–71996 which is now pending.

■ The magistrate's order is a sound one and is hereby upheld. Plaintiffs' objections are overruled. Thus, in conformity with the views herein expressed, plaintiffs may have their discovery by other means which give adequate protection to the legitimate interest of the defendants in keeping this necessary information from being used or abused for any purpose other than this litigation. The burden of preparing such a protective order should be placed on the party seeking the information. For reference counsel are advised that in *Ramos v.*

*Lamm,* 77–K–1093, I ordered that such information, once obtained, must be deemed confidential, must be disclosed only on a need-to-know basis and used only for the purposes of that litigation. A proposed order should include a provision requiring that any person sharing the data must be provided with a copy of the protective order with written acknowledgment therefor and the order should contain a statement that any person who makes or assists in making an unauthorized disclosure is subject to certain penalty and punishment for contempt of court.