UNITED STATES of America

v.

Joseph F. O'NEILL and Frank A. Scafidi.

Misc. No. 79–90.

United States District Court, E. D. Pennsylvania.

Feb. 15, 1979.

Peter F. Vaira, U. S. Atty., Philadelphia, Pa., for plaintiff.

Sheldon L. Albert, City Sol., City of Philadelphia, Philadelphia, Pa., for defendants.

BENCH OPINION

TROUTMAN, District Judge.

THE COURT: Before the Court is the Government's motion to enforce certain

subpoenas duces tecum issued pursuant to 42 United States Code, Section 1975d(g). That section and subsection is part of 42 U.S.C., 1975, which created "in the executive branch of the Government a Commission on Civil Rights (hereinafter called the "Commission")."

Under the Act the Commission, briefly spoken, shall:

1. investigate allegations of denial of voting privileges by reason of color, race, religion, sex, or national origin;

2. study and collect information concerning denial of equal protection of the laws for the reasons stated;

3. appraise the laws and policies of the Federal Government with respect to denials of equal protection of the laws;

4. serve as a national clearinghouse for information in respect to such denials, and;

5. investigate allegations of patterns of fraud or discrimination in the conduct of certain national elections, a subject not here involved today.

The Act provides for the submission of reports to the President and the Congress. It provides for the issuance of subpoenas for the attendance and testimony of witnesses, and vests in this court appropriate jurisdiction to enforce such subpoenas.

The Act further provides for public hearing, the publishing of all dates for hearing, the time and place thereof, and the public announcement of the subject or subject matter of the hearing.

Thus, the Commission is committed to public hearings with a duty to publicly report to the President and the Congress and to act as a "clearinghouse."

Against this background the Commission here seeks information pursuant to the broad terms of certain subpoenas duces tecum which are resisted by O'Neill and Scafidi, both police officials, for the reason that the production of such information will interfere with ongoing criminal investigations, both at a state and Federal level, and civil litigation, both present and future. They point out that there are existing grand jury proceedings being conducted in both state and federal courts, the secrecy of which and the effectiveness of which will be affected by the disclosure of the information under subpoena. Similarly, there are pending civil cases and potentially future civil cases, in which the litigants may suffer substantial prejudice as a result of the public disclosure of the information subpoenaed.

Although the Act creating the Commission and establishing its procedures provides that the Commission may go into "executive session" upon determining that certain evidence may "tend to defame, degrade or incriminate" any person, it does not provide for the impoundment of such evidence or otherwise protect its secrecy, except in the discretion of the Commission. Rather, its publication subsequent to the executive session is expressly provided for (Section 1975a (e)).

Thus, under the terms of the statute, we find no provision for the secrecy or impoundment of such evidence pending the termination of related grand jury proceedings, criminal trials and proceedings, or civil trials and proceedings. Moreover, neither the representatives of the Commission nor counsel have offered any viable suggestion such as would answer or cure the objections asserted.

Demonstrating their good faith and their belief in the objections asserted, O'Neill and Scafidi, Police Officials, have already submitted to the Commission all information sought as to files, situations and individuals where all legal proceedings, either criminal or civil, have been completed. Such submissions were the result of conferences with the Court following the filing of the motion under consideration. The Commission, however, is not satisfied. It demands all information sought immediately, hopefully for public hearings to be held on February 20th and 21, 1979, next Tuesday and Wednesday, respectively.

Thus, we are deprived of the luxury of preparing a carefully-drafted, carefully-edited, full-blown opinion. Rather, to meet the Commission's convenience and its demands, we submit this bench opinion.

Except for the fact that it has scheduled and published two days of hearings, the Commission has not explained, at least to our satisfaction, why, with continued investigatory powers and future reports to the President and Congress, it cannot delay continued investigation pending completion of current grand jury proceedings and trials existing at both state and federal levels.

Although it faces no deadlines, it would, apparently for purposes of convenience, jeopardize law enforcement agencies seeking to eradicate and punish that which the Commission seeks only to investigate. Thus, as a creature of the "executive branch of the government," it would jeopardize the activities of the judicial branch of the government, currently dealing directly with the same individuals and the same or similar subject matter.

We understand the basis for the Commission's insistence that it forthwith proceed with its own schedule of hearings and investigation. However, it is our duty, as expressly provided by Congress, to determine whether, under the circumstances here existing, the subpoenas should be enforced.

In opposing the motion to enforce the subpoenas, the police officials in question assert that information with regard to matters subject to ongoing investigation and pending litigation is protected by a privilege, sometimes described as governmental, otherwise described as executive, not to disclose such information when such disclosure would be harmful to the public interest. Accordingly, we shall now consider that body of law which has developed regarding governmental privilege which establishes a balancing process relative to matters such as those here involved today.

■ It is well settled that the government has a qualified privilege to prevent public disclosure of investigative files and related material prepared in the course of an ongoing criminal investigation. We cite *Jabara v. Kelley,* 75 F.R.D. 475 (E.D.Mich. 1977). See also *Kinoy v. Mitchell,* 67 F.R.D. 1 (S.D.N.Y.1975), especially page 11, footnote 33 and the cases cited therein.

■ However, this privilege may not be lightly invoked. As to this, see *Wood v. Breier,* 54 F.R.D. 7 (E.D.Wis.1972). There must be a formal claim of privilege asserted by a proper officer of the department which has control over the information, after personal consideration by that officer or officers. See *Carter v. Carlson,* 56 F.R.D. 9 (D.D.C.1972), citing *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). The *Carter* Court noted that although *Reynolds* was concerned with military secrets, the prerequisites for formal invocation of the privilege have been applied uniformly, regardless of the particular kind of claim advanced.

Once the privilege is invoked, it becomes the duty of the Court to determine whether a privilege does exist. See again *Kinoy v. Mitchell* and *Wood v. Breier.* The privilege is not absolute, but is qualified, and may be overcome by a litigant's showing of need for the material great enough to outweigh the policies favoring nondisclosure. Here see *Kaiser Aluminum & Chemical Corporation v. United States,* 157 F.Supp. 939, 141 Ct.Cl. 38 (1958); also see *Timken Roller Bearing Company v. United States,* 38 F.R.D. 57 (N.D.Ohio 1964), and *Mitchell v. Roma,* 265 F.2d 633 (3 Cir.1959).

Here in our situation today the Commission is not a "litigant." It is an investigatory agency of the executive branch, created by the Congress.

Judicial determination must be done on a case-by-case ad hoc basis, by balancing the applicable public policies in the light of the material and the nature of the material sought to be discovered in each individual case. See *Wood v. Breier* again, footnote 17, on page 11, and the cases cited therein, with particular reference to *Roviaro v. United States,* 353 U.S. 53, at page 62, 77 S.Ct. 623, 1 L.Ed.2d 639, wherein the Supreme Court held that no fixed rule is justifiable, and whether the proper balance renders nondisclosure erroneous depends upon the circumstances of each case.

■ The Courts have also noted that the privilege of nondisclosure is subject to time

limitation. Once the investigation is completed, for instance, disclosure should be permitted. Here again see *Wood v. Breier,* page 11, footnote 18, and the several authorities cited therein. Also, the privilege is not of unlimited duration, but terminates after a reasonable time. See *Swanner v. United States,* 406 F.2d 716 (5 Cir.1969).

■ Because this matter is to be dealt with on a case-by-case basis, stare decisis is less controlling than it would normally be. However, Judge Becker of this Court in the case of *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa.1973) devised a list of considerations to be examined when balancing the equities in the context of discovery of police investigation files in civil rights cases. Those considerations are:

" * * * (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case."

Although Judge Becker in *Frankenhauser* was dealing with a particular civil rights action by plaintiffs, and not with the interests of an investigatory agency such as the Commission in this instance, his analysis is helpful in our considerations of the issues present before this Court. Therefore, we shall consider certain of the factors as enumerated.

1. It is apparent that many citizens or individuals who might otherwise freely give certain segments of the government information, such as the *local* District Attorney's Office or the local police offices, will be discouraged in so doing by the prospect that their identity and the information provided may become the subject of disclosure to an investigative agency, which, acting as a "clearinghouse," reports to both the executive and Congressional branches of government at a Federal level.

Information may be disclosed to local police officials intending that it will be used judiciously so as not to embarrass or otherwise involve the individual. The beginning of successful police investigations in many communities originates with receipt of such information. Successful police investigation is an essential governmental process which should not be aborted by unnecessary and premature disclosure.

2. Having so stated, the impact upon persons who have given such information is self-evident and considered important here in our disposition of the pending motion.

3. The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure is a factor here which may operate in favor of disclosure, considering the purposes and objectives of the Commission, but it is, we believe, outweighed by other considerations.

4. Whether the information sought is "factual data" or "evaluative summary" is of no consequence here, since the Commission seeks both. Obviously, it is the "factual data" which is important in our considerations, which factual data may be prematurely released to the prejudice of ongoing grand jury investigations, criminal and civil trials.

5. Whether the party seeking disclosure is an actual or potential litigant is a consideration clearly operating against the Commission's demands, because it is not and never will be a "litigant" or a defendant in

any criminal proceeding. Its needs are far less at the moment than those of a litigant or defendant or potential defendant in criminal proceedings. The Commission can come back another day and receive the information after grand jury proceedings and trials, both civil and criminal, have been completed.

6. Factor No. 6 as described by the Court speaks for itself. Police investigations are presently ongoing.

7. Intradepartmental disciplinary proceedings is not in our opinion a factor operating against disclosure, as such proceedings could go on with a minimum of interference or prejudice notwithstanding disclosure.

8. As to Factor No. 8 as outlined by Judge Becker, we find the Commission's demands to be nonfrivolous and brought in good faith. However, it is not a litigant in a case, and has demonstrated no immediate need for the information, balanced against the potential damage to ongoing investigations and litigation, both civil and criminal in nature.

We deem Factors 9 and 10 as described by Judge Becker to be inapplicable to the present situation.

The holdings of other Courts, in our opinion, do not support enforcement of the subpoenas in the matter now before us. For example, in *Wood v. Breier, supra,* the motion of the defendants for a protective order suppression discovery was denied, but in that case the criminal investigation had long since been completed and there was no indication that any prosecution was contemplated.

In *Dos Santos v. O'Neill,* 62 F.R.D. 448 (E.D.Pa.1974), Judge Newcomer concluded that plaintiffs were entitled to the material they sought in part because no criminal prosecution would be interfered with since it was "unrealistic to expect" that there would be a future prosecution. It is not so unrealistic to expect that in the instant situation, considering the fact, as represented, that there are ongoing grand jury proceedings and, indeed, criminal trials at both the state and federal level.

On the other hand, research indicates that where criminal investigations were on-going, that the courts have consistently denied discovery of police investigatory files and have upheld the claims of privilege there asserted.

In *United States ex rel. Jackson v. Petrilli,* 63 F.R.D. 152 (N.D.Ill.1974), the court denied a motion of plaintiff to compel production of certain statements when a criminal investigation was ongoing.

*Gaison v. Scott,* 59 F.R.D. 347 (D.Hawaii 1973), resulted in disclosure of material in one case where the criminal investigation had been completed, but nondisclosure of material in another case in which the investigation was continuing as to the same individual. That holding is particularly relevant to the matter before this court because police officials before us have already made available to the Commission files relating to matters in which litigation has been concluded, and seek only to protect material in files relevant and related to matters in which investigation and litigation has not been concluded.

In *Brown v. Thompson,* 430 F.2d 1214, 5 Cir. 1970, the Court of Appeals for the Fifth Circuit upheld, as not an abuse of discretion, the district court's denial of disclosure on the grounds that a homicide investigation was still open and ongoing.

Because of the case-by-case treatment, these authorities are not as binding upon this Court as they might otherwise be, since stare decisis is not as controlling. Nevertheless, from these cases it is quite evident that Courts are careful not to require disclosure when criminal investigations and prosecutions are continuing and likely to be jeopardized.

We have carefully considered the suggestion that the files and information be made available with the deletion of names, substitution of numbers, deletion of addresses and substitution of some symbol as to both the parties and the witnesses. It is quite evident, however, that deletion of names and addresses will not cure the problem.

Rather, to cure the problem it would seem that deletion of descriptive data, factual data, data as to the locale of the incident, data as to how the incident occurred, would also be required. To attempt to tailor an appropriate order along those lines would effectively negate the Commission's purposes and abort its investigation; whereas, the Commission upon conclusion of criminal proceedings and other proceedings may come back with continued investigatory powers, continued obligations to report to the executive and the Congress, and obtain then, without damage to the judicial proceedings existing, the information which it seeks.

Accordingly, the motion will be denied and an appropriate order will be filed.

If there is nothing further, the court stands adjourned.