No. 79SA349

**Joseph Martinelli, Robert Dill, L. F. Carlson, Charles George Campbell, Dennis Degenhart, and the City and County of Denver, a municipal corporation v. The District Court in and for the City and County of Denver, Colorado, Second Judicial District, and the Honorable Leonard P. Plank, one of the Judges thereof**

(612 P.2d 1083)

Decided February 4, 1980.

Elliott & Greengard, Richard D. Greengard, James E. Goldfarb; Holm and Dill, P.C., H. Alan Dill, Jon Stonbraker, for petitioners.

Gorsuch, Kirgis, Campbell, Walker and Grover, C. Willing Browne, Stephen Klein, for respondents.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

This is an original proceeding brought under C.A.R. 21. The petitioners seek a writ prohibiting the respondent district court from enforcing discovery of certain files and reports maintained by the Denver Police Department, and requiring the court to enter a protective order precluding such discovery. In the alternative, the petitioners seek a writ requiring the respondent court, before it enforces discovery, to conduct an *in camera* examination and to excise from the files and reports materials asserted to be beyond the scope of discovery. We issued a rule to show cause and now make the rule absolute, granting the alternative relief sought by the petitioners.

The petitioners are the City and County of Denver (Denver), the Denver Police Department (department), and individual police officers employed by the department. Petitioners are parties defendant in a civil action brought in the respondent court by Jerre D. Malone (Malone). Based on an arrest which occurred on July 15, 1976, Malone alleges: (a) assault and battery by the individual police officers and negligence on their part in effecting his arrest; (b) false arrest and malicious prosecution; (c) violations of the First, Fourth, Fifth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution, and violations of the Colorado Constitution; (d) conspiracy among all defendants to commit the assault and battery, false arrest, malicious prosecution, and constitutional violations; and (e) negligence on the part of Denver and the department in the selection, supervision, and retention of the individual police officers. Malone seeks actual and special damages in the amount of $325,000 and exemplary damages in the amount of $500,000.

Pursuant to C.R.C.P. 34, Malone served the department with a request for production of documents, seeking the opportunity to inspect, *inter alia*:

(1) the complete personnel file maintained by the department for each of the individual defendant police officers;

(2) "[a]ny and all documents, writings, memoranda, data, notes, reports, correspondence, or the like . . . which pertain to past performance, job rating, and conduct of the individual officers in connection with the performance of their duties as officers";

(3) the reports of the department's internal investigation into the July 15, 1976, arrest.

For purposes of convenience, we refer to the requested materials as the "personnel files" and the "S.I.B. reports" (the latter designation referring

to the reports of the department's Staff Investigation Bureau, and encompassing the second and third categories of requested materials).

The petitioners objected to the request for production, and Malone filed a motion to compel discovery pursuant to C.R.C.P. 37. The respondent court ordered that the personnel files and S.I.B. reports be produced for an *in camera* inspection. After that inspection, the court entered an order granting Malone's motion to compel discovery in its entirety. The court also ordered that the files and reports be inspected only by Malone's counsel, and that the contents of the files and reports be discussed only between Malone and his counsel.

The petitioners seek to preclude discovery of the personnel files and S.I.B. reports on the grounds that: (1) they are irrelevant to the causes of action brought by Malone; (2) they are privileged materials; (3) discovery would violate the constitutional rights to privacy of the individual police officers named as parties defendant; and (4) they are exempted from discovery pursuant to section 24-72-204(3)(a)(II), C.R.S. 1973, and section 24-72-305(5), C.R.S. 1973 (1978 Supp.), and pursuant to specified provisions of federal statutory law.

## I.
### *The Claim of Irrelevance*

■ The petitioners contend initially that the information contained in the personnel files and S.I.B. reports is neither "relevant to the subject matter involved in the pending action" nor "reasonably calculated to lead to the discovery of admissible evidence," within the meaning of C.R.C.P. 26(b)(1). Our discussion in *Lucas v. District Court,* 140 Colo. 510, 345 P.2d 1064 (1959), makes it clear that the standard of relevance for purposes of discovery under C.R.C.P. 26(b)(1) is not equivalent to the standard for admissibility of evidence at trial, and that nonprivileged information "generally bearing on" the pending causes of action is discoverable under the rule. *Id.*, 140 Colo. at 520, 345 P.2d at 1069.

The petitioners indicate that the personnel files contain, *inter alia,* the following types of information: performance reports made by the supervisors of the individual petitioner police officers; personnel orders, assignments, demotions, promotions, and commendations; "information concerning other litigation"; and "copies of newspaper articles concerning the subject officer." The S.I.B. reports contain information relating to: complaints made by citizens against individual police officers; records of actions taken in response to citizen complaints; and "reports on the officers' handling of many different situations."

As a general matter, some or all of this information could be probative of the department's knowledge of specific instances of misconduct on the part of the individual police officers, or their propensities toward such misconduct, if any. The information could also be probative of the department's efforts to supervise the officers and to minimize the

occurrence of such misconduct, and of the department's reasons for retaining individual police officers after the resolution by the Staff Investigation Bureau of citizen complaints against the officers.

These facts (*i.e.*, Denver's knowledge of misconduct or propensities toward misconduct by the officers, its efforts to supervise the officers, and the reasons for retaining individual officers) could be critical to the proof by Malone of Denver's independent tort liability for negligence in the selection, supervision, and retention of the officers. *See generally Restatement (Second) of Agency* § 213 (1958); *W. Seavey, Handbook of the Law of Agency* § 82(B) (1964). *Cf. Western Stock Center, Inc. v. Sevit, Inc.*, 195 Colo. 372, 578 P.2d 1045 (1978); *Colwell v. Oatman*, 32 Colo. App. 171, 510 P.2d 464 (1973). These facts could also be important as related to Denver's liability to indemnify the individual police officers for any exemplary damages awarded against them pursuant to Malone's causes of action against the officers individually. *Frick v. Abell*, 198 Colo. 508, _____, 602 P.2d 852, 856 (1979).

The order of the respondent court compelling discovery of the personnel files and S.I.B. reports does not indicate whether the court examined the materials contained in the files and reports in order to determine their relevance within the meaning of C.R.C.P. 26(b)(1). We therefore believe it necessary for the respondent court to conduct an *in camera* examination of the files and reports, to make specific findings of relevance as to individual items of material contained in the files and reports (within the meaning of C.R.C.P. 26(b)(1)), and to disallow discovery of those materials, if any, which it determines to be irrelevant to Malone's causes of action (pursuant to C.R.C.P. 26(c)(1)).

## II.

### *The Claim of Privilege*

In opposing discovery of the personnel files and S.I.B. reports, Denver and the department place principal reliance on a qualified common law evidentiary privilege, variously referred to as the "official information," "governmental," or "executive" privilege. Comment, *Discovery of Government Documents and the Official Information Privilege*, 76 Colum.L.Rev. 142 (1976); 8 *J. Wigmore, Evidence* §§ 2378-2379 (McNaughton rev. 1961); *Wood v. Breier*, 54 F.R.D. 7, 11 (E.D.Wis. 1972). Broadly stated, this privilege sanctions the nondisclosure by governmental agencies or instrumentalities of information, files, reports, or memoranda maintained by those agencies or instrumentalities, when "disclosure would be harmful to the public interest." *United States v. O'Neill*, 81 F.R.D. 664, 666 (E.D.Pa. 1979).

The official information privilege[1] is significant in the context of

---

[1] We specifically exclude from the scope of our discussion two forms of the privilege: (a) that which relates to diplomatic or military secrets (*see generally United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953)); and (b) that which relates to the identities of informants who supply the government with information about the commission of crime (*see generally* 8 *J. Wigmore, supra*, at § 2374(f)).

civil discovery under C.R.C.P. 26(b)(1), since that rule allows a litigant to obtain discovery of "any matter, *not privileged*, which is relevant to the subject matter involved in the pending action" (emphasis added). Under this rule, therefore, and to the extent that they come within the scope of the official information privilege, the personnel files and S.I.B. reports sought by Malone are protected from discovery.

■ When the official information privilege is raised in opposition to a request for civil discovery under C.R.C.P. 26(b)(1) and C.R.C.P. 34,[2] the trial court must make an independent determination of the extent to which the privilege applies to the materials sought to be discovered. This determination is the result of the *ad hoc* balancing of: (a) the discoverant's interests in disclosure of the materials; and (b) the government's interests in their confidentiality. *United States v. Leggett & Platt, Inc.,* 542 F.2d 655, 658 (6th Cir. 1976); *Crawford v. Dominic,* 469 F.Supp. 260, 262 (E.D.Pa. 1979); *United States v. O'Neill, supra,* at 666; *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 343-344 (E.D.Pa. 1973); *Assured Investors Life Insurance Co. v. National Union Associates, Inc.,* 362 So.2d 228, 233 (Ala. 1978); *City of Los Angeles v. Superior Court, County of Los Angeles,* 33 Cal. App.3d 778, 785, 109 Cal.Rptr. 365, 369 (1973); 76 Colum.L.Rev. 142, *supra,* at 143.

■ The trial court must balance the competing interests through an *in camera* examination of the materials for which the official information privilege is claimed.[3] Such a review enables the trial court: (a) to allow or disallow discovery as to individual items of material for which the privilege is claimed; or (b) to excise or edit from individual items those matters which it determines to come within the scope of the privilege; or (c) to take other protective measures pursuant to C.R.C.P. 26(c). *Frankenhauser v. Rizzo, supra; Wood v. Breier, supra; Cook v. King County,* 9 Wash. App. 50, 54, 510 P.2d 659, 662 (1973); 76 Colum.L.Rev. 142, *supra,* at 168-171. *See also United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v.*

---

[2] C.R.C.P. 34 allows a civil litigant to request the production of documents and tangible things "which constitute or contain matters within the scope of Rule 26(b)."

[3] The governmental agency or instrumentality claiming the privilege must aid the trial court by providing a "specific designation and description" of each item of material for which the privilege is claimed, "as well as precise and certain reasons" for preserving the confidentiality of each item. *Black v. Sheraton Corporation,* 371 F.Supp. 97, 101 (D.D.C. 1974). The trial court may properly reject a broad, nonparticularized claim of the privilege, made with respect to an entire group of materials. *Id.;* 76 Colum.L.Rev. 142, *supra,* at 168.

*Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

■ The factors to be considered by the trial court in this *in camera* balancing process vary widely, depending on the nature of the litigation and of the materials sought to be discovered. Because the balancing process proceeds on an *ad hoc* basis, the effect of the doctrine of *stare decisis* in cases requiring application of the official information privilege is limited. *Frankenhauser v. Rizzo, supra,* at 344; *Wood v. Breier, supra,* at 11; *United States v. O'Neill, supra,* at 666; 76 Colum.L.Rev. 142, *supra,* at 144. However, in litigation arising from allegations of police misconduct, when the official information privilege is claimed for files and reports maintained by a police department (concerning the incident on which the allegations of misconduct are based, or about the officers involved in the incident), the trial court has the advantage of the following formulation of factors to be considered in applying the privilege, developed in *Frankenhauser v. Rizzo, supra*:

"[A]t least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case" 59 F.R.D. at 344.

We adopt this formulation as illustrative of the range of factors to be considered by the trial court in applying the official information privilege in such cases. As an aid to the respondent court, we include in our opinion the following limited discussion of the application of these ten factors to the circumstances of the case before us. It is not our intention to preclude the litigants from advancing, for the trial court's consideration, factors not included in the *Frankenhauser* formulation. The discoverant and the governmental agency or instrumentality claiming the official information privilege (see fn. 3, *supra*) are free to suggest additional factors for the trial court's benefit in conducting its balancing process, especially when such additional factors are appropriate with respect to the particular circumstances of the case in w̌ich the privilege is claimed.

*Factors (1) and (2).* Denver and the department argue that information procured from citizen-complainants is contained in the personnel files and S.I.B. reports. If they advance, as particularized reasons for applying the privilege to the files and reports, the possible chilling effect of disclosure on the process of procuring such information from citizen-complainants and the possible adverse impact on the complainants of disclosure of their identities, the trial court could consider avoidance of any such adverse impact through the excising of the complainants' identities from the files and reports. At any rate, we are doubtful that "rare instances of disclosure made after application of a balancing test comprising detailed standards such as those enumerated here would deter citizens from revealing information to the police." *Frankenhauser v. Rizzo, supra,* at 344.

*Factor (3).* As the principal policy reason for applying the official information privilege to the personnel files and S.I.B. reports, Denver and the department advance the proposition that knowledge on the part of individual police officers that the information they provide to S.I.B. investigators will later be subject to disclosure in civil litigation will have a detrimental effect on frank and open communication between the officers and the investigators. This proposition should be subject to careful scrutiny. Because police officers report to S.I.B. investigators "knowing that their reports might be used against them or their fellow officers in either criminal or departmental disciplinary actions," we doubt that "the addition of possible civil sanctions to criminal and departmental ones would end candor or result in refusal to make reports." *Wood v. Breier, supra,* at 13. *Contra, Kott v. Perini,* 283 F.Supp. 1, 2 (N.D.Ohio 1968); *City of Los Angeles, supra,* 109 Cal. Rptr. at 369.

*Factor (4).* Materials in investigatory files and reports which constitute "evaluative summary" are typically within the scope of the official information privilege. Privileged status for such materials provides at least partial protection against the chilling effect of disclosure on "governmental self-evaluation and consequent program improvement." *Frankenhauser v. Rizzo, supra,* at 344-345; 76 Colum.L.Rev. 142, *supra,* at 160-161. Denver and the department have indicated that the personnel files and S.I.B. reports sought by Malone contain periodic performance reports made by the supervisors of the petitioner police officers, and that the S.I.B. reports contain recommendations for internal discipline or exoneration of those officers. Unless the trial court determines that Malone's need for these evaluative materials clearly outweighs the department's interest in confidentiality, it should apply the official information privilege to the evaluative materials and disallow discovery of them by Malone, pursuant to C.R.C.P. 26(c)(1).

*Factors (5), (6), (7), and (8).* There is no indication that these factors apply to the circumstances of this case.

*Factor (9)*. As indicated in Part I of this opinion, Denver's knowledge of misconduct or propensities toward misconduct on the part of its police officers, the city's efforts to supervise its officers, and the city's reasons for retaining individual police officers after the resolution of citizen complaints against them may be critical to Malone's cause of action for negligence on the part of Denver in the selection, supervision, and retention of the individual petitioner police officers. Denver and the department have not suggested a source, other than the personnel files and S.I.B. reports, which would enable Malone to determine these critical facts. *See Crawford v. Dominic, supra,* at 263. Therefore, unless such an alternative source is pointed out to the trial court, factor (9) favors discovery by Malone of some, if not all, of the files and reports.

*Factor (10)*. For these same reasons, factor (10), the importance of the information to the plaintiff's case, favors discovery. This tenth factor has been described as the "weightiest" of the factors set forth in the *Frankenhauser* formulation. *Crawford v. Dominic, supra,* at 263.

It is not apparent, from the order of the respondent court compelling discovery, whether the court applied the proper balancing test to determine the extent to which Malone's interests in disclosure of the files and reports outweigh Denver's and the department's interests in their confidentiality. We therefore direct the respondent court to conduct an *in camera* examination of the files and reports and to make specific findings on the claim of privilege. The court's ruling, or course, should disallow discovery, pursuant to C.R.C.P. 26(c)(1), of any items of material which it determines to come within the scope of the official information privilege.

III.

*The Claimed Violation of the Officers'*
*Constitutional Rights to Privacy*

The petitioners' third argument is that compelled discovery of the materials contained in the personnel files and S.I.B. reports would violate the individual petitioner police officers' rights to privacy, guaranteed by the due process clause of the Fourteenth Amendment and other provisions of the United States Constitution. Although the officers cite no authority in support of this proposition, we assume that they intend to refer to that aspect of the right to privacy which protects "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, 73 (1977). *See also Nixon v. Administrator of General Services,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867, 900 (1977); *Plante v. Gonzalez,* 575 F.2d 1119, 1132 (5th Cir. 1978), *cert. denied,* 439 U.S. 1129 (1979).

We will refer to this aspect of the right to privacy as the "right to confidentiality." *Plante, supra,* at 1132. While its contours are not yet fully defined, this right to confidentiality encompasses the "power to control what we shall reveal about our intimate selves, to whom, and for

what purpose." *Byron, Harless, Schaffer, Reid and Associates, Inc. v. State ex rel. Schellenberg,* 360 So.2d 83, 92 (Fla. App. 1978). This right is by no means absolute, and the courts must engage in a balancing process when applying the right in specific cases. *Nixon v. Administrator, supra,* at 2777-2778; *Plante, supra,* at 1134; *Shuman v. City of Philadelphia,* 470 F.Supp. 449, 457-459 (E.D.Pa. 1979). *Cf. People v. Milnes,* 186 Colo. 409, 413-414, 527 P.2d 1163, 1165 (1974); *Davidson v. Dill,* 180 Colo. 123, 130-131, 503 P.2d 157, 161 (1972); *Berman v. People,* 41 Colo. App. 488, 589 P.2d 508 (1978). When the right to confidentiality is invoked to prevent disclosure of personal materials or information, a tri-partite balancing inquiry must be undertaken by the court, as follows:

(1)   does the party seeking to come within the protection of the right to confidentiality have a legitimate expectation that the materials or information will not be disclosed?

(2)   is disclosure nonetheless required to serve a compelling state interest?

(3)   if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

(1)   *The claimant's legitimate expectation of nondisclosure.* "An essential requisite of any constitutional claim of disclosural privacy is that the claimant have a 'legitimate expectation of privacy' in the particular information or communication in danger of disclosure by state action". *Schellenberg, supra,* at 94. *See Nixon v. Administrator, supra,* 433 U.S. at 465.

First, the claimant must show that he or she has "an actual or subjective expectation that the information . . . not be disclosed," as, for example, by showing that he or she divulged the information to the state pursuant to an understanding that it would be held in confidence or that the state would disclose the information for stated purposes only. *Schellenberg, supra,* at 94-95.

Second, the claimant must show that the material or information which he or she seeks to protect against disclosure is "highly personal and sensitive" and that its disclosure would be offensive and objectionable to a reasonable person of ordinary sensibilities. *Id.* at 95. The *Schellenberg* court posits a "descending order of sensitivity and constitutional interest," pursuant to which the claimant's objective expectation of nondisclosure is to be determined. At the top of this ranking are those materials and information which reflect the "intimate relationships" of the claimant with other persons. *Id.* at 95. *Cf. Shuman, supra; Fults v. Superior Court in and for County of Sonoma,* 88 Cal. App.3d 899, 152 Cal.Rptr. 210 (1979). Below this ranking:

"the progressively lower tiers would include . . . [the claimant's] beliefs and self-insights; his personal habits; routine autobiographical material;

and finally, his name, address, marital status, and present employment, which together may constitute his irreducible identity to anyone who has reason to acknowledge his existence." 360 So.2d at 95.

Depending, of course, on the circumstances of the individual case, it is less likely that information or materials in the lower tiers of this ranking will come within the zone of protection of the right to confidentiality.

(2) *The requirement of a compelling state interest.* Even if it is determined that the claimant has a legitimate expectation that the personal materials or information in question will not be disclosed through state action, a compelling state interest can override the constitutional right to confidentiality which arises from that expectation. *Plante, supra,* at 1134. *Cf. Davidson, supra,* 180 Colo. at 131, 503 P.2d at 161. The compelling state interest must consist in disclosure of the very materials or information which would otherwise be protected. "To override constitutional privacy interests, a countervailing state interest must exist and be compelling at the point where those interests collide." *Shellenberg, supra,* at 97.

(3) *Least intrusive means.* When it is determined that a compelling state interest mandates the disclosure of otherwise protected materials or information, the trial court must further inquire into the manner in which the disclosure will occur. Disclosure must only be made in a manner, consistent with the state interest to be served, which will intrude least on the claimant's right to confidentiality. *Id.* at 96. *See also Nixon v. Administrator, supra; Whalen v. Roe, supra.*

It remains to apply these general principles to the facts of the case before us. It is not apparent, from the order of the respondent court compelling discovery, whether the court engaged in the tri-partite balancing inquiry necessary for application of the constitutional right to confidentiality. We therefore direct the respondent court to conduct an *in camera* examination of the files and reports and to make specific findings on the petitioner officers' claims based on that constitutional right.

First, the respondent court should determine whether any of the materials and information which it has previously determined to be relevant to Malone's causes of action and nonprivileged come within the officers' legitimate expectation of nondisclosure and are therefore, as a threshold matter, within the zone of interests protected by the constitutional right to confidentiality.

Second, the respondent court should determine whether the state interest in "facilitating the ascertainment of truth in connection with legal proceedings" is sufficiently compelling in the context of this case as to override any such expectations of confidentiality. *Fults v. Superior Court, supra,* at 213.

Third, if the respondent court determines that it is necessary to compel discovery of materials and information which come within the zone of

interests protected by the constitutional right to confidentiality, it should do so only through that means which intrudes least on the petitioner officers' rights. In this respect, we note the nonintrusive nature of the process pursuant to which the respondent court will conduct an *in camera* examination of the personnel files and S.I.B. reports to determine their relevance, their privileged status, and their status in relation to the right to confidentiality, and pursuant to which the court will allow or disallow discovery of individual items of material, excise or edit from individual items those matters which it determines to be irrelevant or privileged, and take other protective measures pursuant to C.R.C.P. 26(c).[4] *Fults v. Superior Court, supra,* at 213; *see generally Nixon v. Administrator, supra.*

## IV.
### *The Claim of Statutory Exemption*

The petitioners' final argument is that the personnel files sought to be discovered by Malone are wholly exempted from such discovery pursuant to section 24-72-204(3)(a)(II), C.R.S. 1973, and that the S.I.B. reports are similarly exempted from discovery pursuant to section 24-72-305(5), C.R.S. 1973 (1978 Supp.).[5] The two cited provisions are parts of a comprehensive statutory framework for inspection and copying, by members of the public, of records maintained by state and local governments and governmental agencies (sections 24-72-201 *et seq.* and 24-72-301 *et seq.,* C.R.S. 1973, which we will cite *infra* as the Colorado "open records laws"). In effect, the petitioners contend that sections 24-72-204(3)(a)(II) and 24-72-305(5) constitute privileges from civil discovery within the meaning of C.R.C.P 26(b)(1).

The open records laws regulate, as a general matter, the inspection and copying of governmental records by "any person,"[6] without limitation as to the reason or reasons for which the inspection is undertaken.[7] However, the legislature was careful to limit key provisions of the open records laws, making those provisions applicable except as "otherwise provided by law" or except as "prohibited by rules promulgated by the supreme court or by the order of any court." *E.g.,* sections 24-72-

---

[4] Specifically, we endorse the issuance of a protective order under C.R.C.P. 26(c), limiting disclosure of relevant, nonprivileged information to the claimant and his attorney.

[5] The petitioners also contend that the personnel files and S.I.B. reports are exempted from discovery pursuant to specified provisions of the federal "Privacy Act of 1974" (5 U.S.C. § 552a (1976)), the federal "Government in the Sunshine Act" (5 U.S.C. § 552b (1976)), and the federal "Freedom of Information Act" (5 U.S.C. § 552 (1976 & Supp. I 1977), *as amended by* Act of October 13, 1978, Pub.L. No. 95-454, 92 Stat. 1225), which they consider to have been made applicable to the facts of this case by virtue of section 24-72-204(1)(b), C.R.S. 1973. We find this contention to be wholly without merit.

[6] Sections 24-72-201 and 24-72-203(1), C.R.S. 1973, and sections 24-72-301(2) and 24-72-304(1), C.R.S. 1973 (1978 Supp.).

[7] *Denver Publishing Co. v. Dreyfus,* 184 Colo. 288, 520 P.2d 104 (1974).

203(1), 24-72-204(1)(c) and (2)(a), and 24-72-204(3)(a), C.R.S. 1973, and sections 24-72-304(1) and 24-72-305(1)(b) and (5), C.R.S. 1973 (1978 Supp.). We construe this limiting language, in the context of this case, as a reference to the rules of civil procedure and as expressive of the legislative intent that a court should consider and weigh whether disclosure would be contrary to the public interest. Further, such language indicates that the legislature did not intend that the open records laws would supplant discovery practice in civil litigation. The open records laws are "directed toward regulation of the entirely different situation of the general exploration of public records by any citizen during general business hours." *Tighe v. City and County of Honolulu,* 55 Haw. 420, 424, 520 P.2d 1345, 1348 (1974) (holding a provision of the Honolulu city charter, analogous to the Colorado open records laws, inapplicable as a limitation on Hawaii Rule of Civil Procedure 26 (b)(1)). This view of the scope of the Colorado open records laws parallels the construction consistently placed by the federal courts on the federal counterpart to the open records laws, the "Freedom of Information Act," 5 U.S.C. § 552 (1976 & Supp. I 1977), *as amended by* Act of Oct. 13, 1978, Pub.L. No. 95-454, 92 Stat. 1225. *Kerr v. United States District Court,* 511 F.2d 192 (9th Cir. 1975), *aff'd,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Denny v. Carey,* 78 F.R.D. 370 (E.D.Pa. 1978); *Pleasant Hill Bank v. United States,* 58 F.R.D. 97 (W.D.Mo. 1973); *Hodgson v. General Motors Acceptance Corporation,* 54 F.R.D. 445 (S.D.Fla. 1972). *See generally Morrison v. City and County of Denver,* 80 F.R.D. 289, 291 (D.Colo. 1978).

We therefore hold that the Colorado open records laws (sections 24-72-201 *et seq.* and 24-72-301 *et seq.,* C.R.S. 1973) do not, *ipso facto,* exempt the personnel files and the S.I.B. reports from discovery in civil litigation.

## V.

We grant the alternative relief sought by the petitioners and direct the respondent court to conduct a second *in camera* examination of the personnel files and S.I.B. reports, make appropriate findings, and order discovery of materials contained in the files and reports, subject to appropriate protective orders, consistent with the views expressed in this opinion.

In addition, the trial court shall place copies of all items of material held not discoverable in a sealed file, which file shall be a part of the record of the case.

Rule made absolute.

JUSTICE GROVES, JUSTICE ERICKSON, and JUSTICE DUBOFSKY specially concur.

JUSTICE ERICKSON specially concurring:

While I concur in the result, I cannot subscribe to the analysis set forth by the majority in reaching the result in this case. In my view, Part II of the Court's opinion breaks with the established wisdom that the courts should refrain from issuing advisory opinions, and, instead, limit themselves to deciding the case at hand. I feel that the far wiser course here would be simply to set out a clear rule for the lower court to follow. It should be left for future cases, which present concrete fact situations, to expound upon the various elements of the test set out by the Court today.

The majority recognizes that a claim of an official or executive privilege requires the courts to balance a number of conflicting factors, including the litigant's need for information to prove his case, the government's interests in preventing disclosure, and, perhaps most important, the strong public policy in favor of full disclosure. *See* the case note discussing *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D. Pa. 1973), in 42 Fordham L. Rev. 675 (1974). By its opinion, however, the majority appears to deemphasize that the balancing process must be limited to the unique facts presented by the case at hand; seldom will the calculus used in one case be useful in resolving another. The majority's long exposition on the elements of the *Frankenhauser* test will obscure the fact that the trial court must be given a wide latitude in resolving claims of executive privilege.

Early on, the majority speaks in terms of the wide latitude to be given to the trial court in balancing the competing factors involving in a claim of privilege. Its exegesis on *Frankenhauser,* however, belies this posture and I fear that the result may be that the Court has prematurely bound itself in cement. In support of this proposition, one need only refer to the majority's reference to points 5, 6, 7, and 8 in the *Frankenhauser* case which, although part of the majority's holding, are clearly not relevant to this case.[1]

While I am in favor of adopting the *Frankenhauser* test in its general form, I would not limit the range of factors to be considered by the trial court, or dictate an analysis, in future cases until it is absolutely necessary to do so. Any other approach could bind this Court to an interpretation that will later prove to be unfortunate. Perhaps the words of Bowen, L.J. in *Cooke v. New River Co.,* L. R. 38 (1888), *cited in* R. Leflar, *Appellate Judicial Opinions* at 56, state the case most eloquently:

"I am extremely reluctant to decide anything except what is necessary for the special case, because I believe my long experience that judgments come with far more weight and gravity when they come upon points which

---

[1] Reversible error may not occur, in my opinion, in a case merely because a trial judge considers but does not make a finding on each of the specific elements in the *Frankenhauser* test. In my view, that question is not yet before this court and should not be disposed of by this case.

the Judges are bound to decide, and I believe that obiter dicta, like the proverbial chickens of destiny, come home to roost sooner or later in a very uncomfortable way to the Judges who have uttered them, and are a great source of embarassment in future cases."

I would limit this case to an enunciation of the balancing test and leave it for the lower court to apply the test to the facts at hand.

JUSTICE GROVES and JUSTICE DUBOFSKY join me in this special concurrence.